JOHN BISSEL et al., Respondents, *v.* NATHAN CAMPBELL,
Appellant.

Defendant signed a bill of lading acknowledging receipt of a specified
quantity of wheat and containing these words, " quantity guaranteed."
The consignee, upon arrival, claimed a deduction for " shortage," which
was allowed by plaintiffs' agent. In an action to recover the amount so
allowed plaintiffs were permitted to prove, under objection, by a person
engaged in the transportation business, that the words '' quantity
guaranteed," according to the custom of the business, meant that the
bill of lading was conclusive evidence of the amount of grain to be
delivered; and that, if it fell short, the carrier was to pay for the short-
age. *Held*, no error; that by the bill of lading itself the carrier guaran-
teed to deliver the quantity specified, and he was responsible therefor;
but if the language of the bill should be considered insufficient to
determine the meaning, the words, " quantity guaranteed," might be
regarded as a technical expression, known to and understood by per-
sons in the business, and evidence from such a person was proper to
explain it.

The bill of lading specified that J. and S. (plaintiffs' agents) should collect
the freight of the consignees and pay to defendant, less advances. After
delivery defendant demanded the balance due him of J. and S., who
paid it; afterward defendant having a claim against the consignees for
demurrage, told J. and S. to collect and settle the freight, but to do nothing
to prejudice his claim for demurrage. Upon the trial the plaintiffs proved.

SICKELS—VOL. IX.          45

the amount allowed by J. and S. for shortage, and claimed that defendant was bound by their settlement thereof. *Held*, that defendant conferred no authority upon J. and S. to admit that the cargo was short, or to settle for it; and that he was not bound thereby.

The only other evidence of deficiency was the measurer's returns. It was proved that, as between buyer and seller in New York, the measurer's returns are received and acted upon as evidence of the quantity of grain sold. *Held*, that measurers of grain in New York are not public officers, and their returns are not evidence; that the custom proved did not apply so as to bind the plaintiffs by the returns, and that plaintiffs, therefore, had failed to establish any deficiency.

(Argued March 10, 1873; decided June term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the eighth judicial district, affirming a judgment in favor of plaintiffs entered upon a verdict.

This was an action against defendant, as a common carrier, to recover an alleged deficit or shortage in two cargoes of wheat contracted to be transported by him from Buffalo to New York. The facts appearing upon the trial, are set forth in the opinion.

Plaintiffs were permitted to prove, under objection, the amount allowed by their agents, Jennison and Sprague, to the consignees for shortage. The measurer's returns, in the city of New York, of the cargoes delivered by defendant, were also offered and received in evidence, under objection. No other evidence of shortage was given.

Defendant's counsel asked the court to direct a verdict for defendant on the ground, among others, that there was no evidence that either of the cargoes were short, or that defendant did not deliver the whole as required by the bill of lading. The court refused the request, and defendant's counsel excepted. The court charged that plaintiffs had made out a *prima facie* case as to shortage, as the parties settled by the measurer's returns ; to which defendant's counsel excepted. The jury rendered a verdict for plaintiffs.

*Samuel Hand* for the appellant. Authority to settle a claim made by the principal, does not authorize the agent to

pay money for him. (*Fort* v. *Gooding*, 9 Barb., 377.) The judge erred in holding that defendant was bound to deliver in New York the number of bushels named in the bill of lading, whether he received them or not. (*Meyer* v. *Peck*, 28 N. Y., 590; *Ellis* v. *Willard*, 5 Seld., 529; *Sear* v. *Wingate*, 3 Al., 103; *Kelley* v. *Bowker*, 11 Gray, 428; *Shepherd* v. *Naylor*, 5 id., 591.) The evidence of one of the plaintiffs, as to the meaning of the words, "quantity guaranteed," is insufficient and inadmissible to prove the legal construction. (*Higgins* v. *Moore*, 34 N. Y., 417; *Wheeler* v. *Newhall*, 16 id., 392; *Allen* v. *Dykers*, 7 Hill, 497.) Usage cannot be proved by one witness. (2 Greenl. Ev., § 252; *Wood* v. *Hickok*, 2 Wend., 501.)

*L. L. Lewis* for the respondents.

EARL, C. The plaintiffs made a contract with one Stevens to carry four cargoes of wheat from Buffalo to New York, consigned to Dows & Co., two of which cargoes were to be loaded upon the boats of defendant. Plaintiffs' shipping bill had in it the words "quantity guaranteed," and provided that "damage or deficiency in quantity as specified," should be deducted from charges by consignees. They made a contract with the defendant for the carriage of the two cargoes upon two of his boats. He executed a shipping bill for each boat, acknowledging the shipment of a specified quantity of wheat, consigned to Dows & Co., omitting the provision as to any deduction by the consignees for damage or "shortage," but containing the words "quantity guaranteed," and the following clause: "On safe delivery as above, Messrs. Jennison & Sprague collect freight as noted, retain our advance of $768.08, and balance settle with captain." Jennison & Sprague were the agents of the plaintiffs, in the city of New York, for the collection of freight. The defendant delivered the cargoes in the city of New York, to the consignees, and then demanded the balance of his freight of Jennison & Sprague, and they paid it to him.

When Jennison & Sprague settled with the consignees for the freight, the latter claimed a deduction of $90 for shortage, which was allowed, and this action is brought to recover this sum with interest. Upon the trial, the defendant gave evidence tending to show that he delivered to the consignees all the wheat he received at Buffalo, and claimed that he was not, therefore, responsible for any shortage, but the court held at the circuit that, under his bills of lading, he had guaranteed that he would deliver the same quantity of wheat which was specified in the bills, and that he was absolutely responsible for any shortage, and this raises the first question for our consideration.

An ordinary bill of lading is not conclusive, as between the original parties, as to the quantity said to have been received, and any mistake or fraud in the shipment of the goods may be shown. In *Meyer* v. *Peck* (28 N. Y., 590), it was held that the words, in a bill of lading, "any damage or deficiency in quantity the consignee will deduct from balance of freight due the captain," did not import a guaranty that the captain had received the whole quantity of grain specified, and that the captain could show in defence of a claim for shortage that he had delivered all the grain he had received. But Judge DENIO says, in that case, that "no doubt it might be made a matter of express contract that the carrier should account for the precise quantity acknowledged in the instrument, and that no other evidence on that point should be received."

There has been considerable litigation in the courts growing out of the claims of consignees against carriers for shortage, and it must, always be difficult to show whether the shortage was occasioned by the misconduct of the carrier or some mistake in the measurements. Hence, some years since, the clause was inserted in bills of lading upon the canals, that the consignee might make a deduction from the freight on account of shortage in substantially the form contained in the bill of lading in the case of *Meyer* v. *Peck*. It seems to have been supposed that such

a clause would make the carrier responsible for the quantity specified in his bill of lading, but the Court of Appeals held otherwise, and recently the words "quantity guaranteed" have been inserted in bills of lading, and the question to be determined is, what do they mean? In construing written contracts force should be given to all the language used. These words were inserted for some purpose. If they be construed to mean a simple guaranty that the carrier will, without default on his part, deliver to the consignee all the goods he receives, they have no force, as the contract implied by law requires him to do this. It would be quite unreasonable to suppose that the carrier meant by these words to take upon himself the risks from inevitable accident, from which the common law exempts him, and unless we hold that they have the meaning claimed for them by the plaintiffs, it would seem that they have been inserted without any purpose.

I am, therefore, prepared to hold that, upon the bills of lading themselves, the carrier in this case was responsible to the shippers for the quantity of grain specified. But, if I am wrong in this, and there is not sufficient in the bills of lading to enable us to determine the meaning of these words, then they may be regarded as an elliptical phrase, having a meaning to those engaged in transportation upon the canals. It was said by Chief Justice SHAW in *Brown* v. *Brown* (8 Metc., 576), that "the meaning of words and the grammatical construction of the English language are *prima facie* matter of law to be construed and passed upon by the court. But language may be ambiguous and used in different senses; or general words in particular trades and branches of business, as among merchants, for instance, may be used in a new, peculiar or technical sense; and, therefore, in a few instances, evidence may be received from those who are conversant with such branches of business, and such technical or peculiar use of language, to explain and illustrate it." In this case the words "quantity guaranteed," a detached sentence, located as it was in the bills of lading, may be regarded as a technical expression, the meaning of which is not

apparent, but known to, and understood by persons engaged in the business of transportation upon the canals. A person engaged in such business was permitted to testify that this phrase meant, according to the custom of the business, that the bill was conclusive evidence of the amount of grain to be delivered by the carrier; and, that if it fell short, the carrier was to pay for the shortage, and if it overrun he was to have the benefit of the excess. I think this evidence was competent. (1 Greenleaf Ev., § 280). Hence, the court committed no error in holding that the defendant was responsible for any shortage, and this brings us to the next question, whether there was any competent proof of any shortage.

The plaintiffs claim that the defendant authorized Mr. Sprague, of the firm of Jennison & Sprague, to settle with the consignees for the freight, and, hence, that he is bound by the settlement he made in which he allowed a deduction from the freight of $90 on account of shortage. I cannot take this view of the evidence. The defendant had nothing to do with collecting the freight of the consignees, and he had made no contract with them. His bill of lading specified that Jennison & Sprague, who were the agents of the plaintiffs for that purpose, should collect the freight of the consignees, and that they should pay him the balance of freight due him. After he had delivered the wheat, he called upon them and demanded the balance due him, and they paid it to him. He had a claim against the consignees for demurrage, and, after his boats had been unloaded, he told Jennison to collect and settle the freight, but to do nothing to prejudice his claim for demurrage. This evidently had reference to the freight due the plaintiffs as the defendant had no claim for freight against the consignees. His claim was against the plaintiffs, and had been paid. It was simply a direction to Sprague, and could have meant no more, that when he settled plaintiffs' claim against the consignees for freight, he should be careful not to prejudice his claim for demurrage. But if we assume that defendant gave him direction to collect and

settle for *his* freight, such direction conferred no authority to admit that there was shortage, and settle for that. If there was shortage, the claim of the consignees for that was against the plaintiffs under their bill of lading, and the remedy of the plaintiffs was against the defendant under his bills of lading. Hence there was nothing in that evidence showing that the defendant was precluded from disputing the shortage. It became necessary, then, for the plaintiffs in some way to prove the shortage, and this they attempted to do by the measurers' returns. The defendant, in various ways, insisted that he was not bound by these returns, but that the measurers or parties who unloaded the cargoes should be called to prove how much wheat he delivered. The measurers of grain in New York are not public officers, and there is no law making their returns, as to measurement, evidence. It was proved, however, that as between buyer and seller in New York, the measurers' returns are received and acted upon as evidence of the amount of grain sold, and that the buyer generally names the measurer, and, if no objection be made by the seller, the measurer thus named measures the grain. In this case Dows & Co. had sold this wheat, and measurers employed by them measured the grain, and made the returns to them of the quantity. The defendant was clearly not bound by this measurement. He had not sold or bought the grain, and had had no part whatever in selecting the measurers. He had in no way assented that their returns should be taken as evidence of the quantity. Hence, whatever the custom in New York may be between buyer and seller as to measurement, it did not apply to him. Whatever the custom may be between parties as to the measurement of grain in their amicable relations and dealings with each other, I apprehend, when they get into a court of justice, neither will be bound by the results of measurements to which he has not either expressly or impliedly assented.

As there was no other evidence to show that the defendant did not deliver all the wheat specified in his bills of lading,

there was an entire failure of proof to show any deficiency in the quantity of wheat delivered, and hence the plaintiffs should have been defeated.

It follows that the judgment must be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.