FREDERICK MEYER and others, Executors, &c., v. HORATIO
N. PECK.

An ordinary bill of lading is not conclusive, as between the original parties, either as to the shipment of the goods named in it, or as to the quantity said to have been received; and any mistake or fraud in the shipment of the goods may be shown, on the trial.

That part which relates to the receipt of the goods, their quality, condition and quantity, is to be treated as a receipt, and not as a stipulation of a written contract.

A stipulation, in a bill of lading, that "any damage or deficiency in quantity the consignee will deduct from balance of freight due the captain," will not affect this question; and will not be understood as a guaranty that the captain has received the whole quantity of goods specified; or as an agreement to pay for that portion, if any, which shall be found to be deficient, of what he has received. The words "deficiency in quantity" relate to the property shipped.

The principle that a *bona fide* indorsee of a bill of lading, advancing his money on it, may rely upon the quantity acknowledged therein, and may compel the carrier to account for that quantity, whether it was put on board the vessel or not, does not apply to a case where the owner of the property did not purchase it while it was in the hands of the carrier, and did not make title to it through the bill of lading, but his purchase was made prior to the shipment, and the goods were shipped by his agent for him.

THE testator of the plaintiffs, as assignee of a claim for freight, sought to recover from the defendant the balance due on the freight of a cargo of wheat from Buffalo to Rochester. The appellant purchased a quantity of wheat in Buffalo, and shipped the same on a canal boat of which the testator's assignor was captain, to be delivered at Rochester to the defendant, on payment of four and a half cents freight per bushel. The captain signed a bill of lading for 5589 bushels received on board. On delivery, the quantity was found to be short 124 bushels. Proof was offered to show that the cargo was in the same condition when delivered as it was when stowed on board, and that the whole amount received at Buffalo had been delivered at Rochester. The

defendant claimed a reduction from the freight for the amount of the deficiency, in pursuance of a stipulation in the bill of lading as follows: "Any damage or deficiency in quantity the consignee will deduct from balance of freight due the captain."

Upon the trial, the defendant requested the court to charge the jury that the bill of lading was a contract not open to explanation as to quantity, but conclusive; and that as the captain had not delivered the amount mentioned in the bill of lading, the defendant was entitled to recoup for the deficiency. That if the jury believed the defendant had accepted and paid the draft drawn upon him, on the faith of the bill of lading, the plaintiff was estopped from showing that the whole quantity of wheat mentioned in the bill of lading was not received, and the defendant was entitled to recoup for the deficiency. The court refused to charge as requested. The judge charged that the bill of lading was not conclusive, but was evidence to raise a presumption, which must be overcome by the plaintiff. To this charge the defendant excepted. The judge also charged that the captain might show that the quantity admitted to have been received was not received, and if the jury should so find, and that all the wheat received in Buffalo was delivered in Rochester, although less than the amount admitted, the plaintiff was entitled to recover, without any abatement on account of the deficiency. To this the defendant also excepted.

*John K. Porter*, for the appellant.

I. The bill of lading in this case was special; and the receipt for the wheat shipped, being coupled with a stipulation for the deduction of any deficiency from the freight, it was "not open to contradiction, in the sense of the rule applicable to receipts proper." (*Goodyear v. Ogden*, 4 Hill, 104.) 1. In the cases relied on by the respondent, the bill of lading

was in the usual form, without the stipulation contained in this for adjustment of deficiency. (*Wolfe* v. *Myers*, 3 Sandf. 7; *Ellis* v. *Willard*, 5 Seld. 530; *Dickerson* v. *Seelye*, 12 Barb. 99; *Graves* v. *Harwood*, 9 id. 477; Abbott on Shipping, 321.) 2. The fact was proved and undisputed, that by the established custom and usage, the boatmen uniformly paid the deficiency when the cargoes fell short of the bills of lading; and the special contract should be construed in harmony with the usage. 3. In the language of Chief Justice SHAW, "a bill of lading is a contract of great importance, and is to be construed according to its terms, the subject matter, the nature of the business to which it relates, and the usages under which such business is generally conducted." (*Shepherd* v. *Naylor*, 5 Gray, 592; see also Angell on Carriers, § 228.) 4. The carrier is free to *enlarge* his liability, as well as to *restrict* it; and when the provisions of the contract are special, effect is to be given to them in harmony with the purpose of the deviation, which in this case evidently was, to have a simple and certain rule, by which the boatmen who received the grain were to verify the quantity and be responsible for it; so that the bill of lading would be a reliable guide to the consignee in making his payments or advances. (*Harmony* v. *Bingham*, 2 Kern. 99, 108; *Mercantile Ins. Co.* v. *Calebs*, 20 N. Y. Rep. 173; Abbott on Shipping, 247.) 5. The only case in which a bill of lading *like this* seems to have been passed upon is that of *Wilson* v. *Van Santvoord*, which is briefly stated by the presiding judge, in his opinion in the case of *Canfield* v. *The Northern R. R. Co.* (18 Barb. 590.) "The bill [speaking of the *Canfield* case] is silent in respect to an *adjustment* for any damages or deficiencies of cargo, and liquidation out of the freight earned. In this respect this case materially differs from the case of *Wilson* v. *Van Santvoord*, (MS.) decided in this court in January, 1853, cited on the argument. In that case, the bill of lading contained this special clause: 'damages or deficiencies, if any, to be deducted from charges by consignees.' The defendant

was an intermédiate consignee, to whose care the property was consigned, at Albany, for further transportation. When the cargo was delivered, there was an ascertained deficiency of seven barrels of beef. The defendant offered to pay the balance of freight, after deducting the value of the lost beef; but the master, in behalf of the plaintiff, the owner of the boat, refused to make the deduction. It was held that the defendant was authorized to require the adjustment, and the plaintiff could not recover in the action because of his refusal. The decision was put upon the force of the terms of the bill of lading, that the deduction was made a part of the contract, and a condition of the payment of freight; that in one sense it was the duty of the consignee to insist upon the adjustment, inasmuch as the freight was made a sort of fund, to indemnify against losses. It was also held that the carrier, having delivered the property, lost his lien, and that no implied assumpsit could be alleged, because the consignee, Van Santvoord, had complied with the conditions of the bill of lading. 6. A distinction exists between a mere receipt acknowledging money paid, and a receipt containing an agreement, condition or stipulation between the parties. The latter is in the nature of a contract, and can not be varied by parol evidence." (*Niles* v. *Culver*, 8 Barb. 205.)   7. The captain, in this case, confessedly superintended in person the weighing of the cargo, when he received it on his boat; and there was no fraud or imposition, such as might be practiced in the case of closed casks, boxes or packages, and which would perhaps open the entire contract to explanation or correction. (*Smith* v. *Brown*, 4 Hawks' R. 580, 585; *Wakefield* v. *Stedman*, 12 Pick. 562, 564.)   8. The court erred, therefore, in holding, on the trial, that the plaintiff was not concluded as to the quantity by the bill of lading.

II. But if treated as a mere receipt by the carrier, he is concluded by it in respect to the defendant, who paid for the 5589 bushels on the faith of the master's certificate in

N. Y. R.—28,            38

the bill of lading, that he had received that quantity for shipment to the consignee. 1. The judge was clearly wrong in holding, at the circuit, that the defendant's *vendor* was his *agent* in shipping the goods, and this is conceded in the opinion delivered at the general term. 2. The fact that the defendant paid for the wheat in question on the faith of the bill of lading is undisputed; and its effect is not impaired by the circumstance that there was *another* bill of lading, on the faith of which he subsequently paid for the *residue* of the purchase. 3. The contract of affreightment was made between Horton, the vendor, and Pettis, the master, and if this was a mere receipt, *as between them,* it was open to explanation and contradiction. (*Bates* v. *Todd,* 1 Moody & Rob. 106; Abbott on Shipping, 324.) 4. But when neither the consignee nor his agent is the *shipper* of the property, the bill of lading is his muniment of title, and to the extent of his payments or advances made on the faith of it he is protected, as against the carrier, equally with any other party making title under it. (*Dows* v. *Greene,* 24 N. Y. Rep. 638; *Bradstreet* v. *Horan,* 2 Blatchf. 116; *Byrne* v. *Weeks,* 7 Bosw. 372, 379.)

III. But in any aspect of the case, as the master was the personal actor in receiving the cargo, and was certifying facts as to which he had knowledge, and the defendant had none, he is estopped from gainsaying them so far as the defendant acted on the faith of their truth. 1. This very case is put by the court in *Ellis* v. *Willard,* as a familiar illustration of the well settled principle, "A ship-owner may be estopped from alleging a deficiency in the property shipped, as against a *consignee* who has advanced money upon the credit of the bill of lading." (5 Seld. 531.) 2. The principle is illustrated in various forms in the cases arising upon bills of lading. (*Dickerson* v. *Seelye,* 12 Barb. 99; *Howard* v. *Tucker,* 20 Eng. Com. Law Rep. 478; *Byrne* v. *Weeks,* 7 Bosw. 372; *Dows* v. *Greene,* 24 N. Y. Rep. 638.) 4. If one take a security of the agent of the principal with whom

he deals, unknown to the principal, and give the agent a receipt as for the money due from the principal, in consequence of which the principal deals differently with his agent on the faith of such receipt, the principal is discharged, though the security fail. (*Wyatt* v. *Marquis of Hertford*, 3 East, 147.)   5. The estoppel applies, not upon the ground of fraud, or willful misrepresentation in making the statement, but upon the ground that it will be a fraud to show that it is untrue, to the prejudice of one who has acted upon the faith of such statement.    (*Kingsley* v. *Vernon*, 4 Sandf. 361.)

IV. Even if this were otherwise, the motion for a nonsuit should have been granted, as the admission in the bill of lading was controlling, unless it was countervailed by evidence in law warranting the presumption that it was false. 1. The testimony of the plaintiff's assignor was not inconsistent with the truth of the admission; and showed merely that the wheat was negligently secured—that there was ample opportunity by night and by day for persons on or off the boat to remove what they chose—and that he did not observe the absence of the wheat, or know how it was taken. 2. Under such circumstances the granting of a nonsuit was matter of right, and the error of law is not cured by the verdict of the jury.    (*Lomer* v. *Meeker*, 25 N. Y. Rep. 361.)

*J. C. Cochrane*, for the respondents.

I. The bill of lading was not conclusive.   It was competent by parol evidence to show a mistake in the quantity. (Abbott on Shipping, 324; *Ellis* v. *Willard*, 5 Seld. 529.)

II. The respondent was not estopped by the bill of lading. 1. The wheat was not purchased by the bill of lading, but was previously owned by the appellant.   He was both shipper and consignor, and the whole transaction was with him. 2. As matter of law, the draft was not paid on the strength of the bill of lading.   The bill of lading was never transfer-

red; it did not accompany the draft; the draft was for the cargo of the two boats, and consequently it was impossible for this bill of lading to have any thing to do with a large part of it, as it only embraced a part, and the draft was paid in orders, money and flour, at different times, and the deficiency may have been upon the other boat. 3. The mistake was made by the appellant himself, through his agents, either at Buffalo or Rochester. 4. He never put his refusal to pay on this ground, either when demand was made or in the pleadings. 5. Estoppels must be mutual. There was nothing in the whole transaction to prevent the appellant from showing a mistake in his favor. 6. The appellant knew that the bill of lading was open to explanation. If he saw fit to make it conclusive upon himself, without our knowledge or consent, he could not also charge us.

INGRAHAM, J. It is well settled that an ordinary bill of lading is not conclusive, as between the original parties, either as to the shipment of the goods named in it, or as to the quantity said to have been received, and any mistake or fraud in the shipment of the goods may be shown on the trial. (*Howard* v. *Tucker*, 1 B. & Ad. 712; *Berkley* v. *Watting*, 7 Ad. & El. 29.) In *Ellis* v. *Willard*, (5 Selden, 529,) ALLEN, J. says, that part of the bill which relates to the receipt of the goods, their quality, condition and quantity, is treated as a receipt, as distinct from the contract. Numerous cases are cited in support of this rule; and DENIO, J. in the same case, says: "It [the bill of lading] is very high and authentic evidence of the quantity and condition of the goods, but is only evidence, and not between the primary parties an estoppel."

The additional stipulation contained in the bill of lading, in the present case, does not affect this question. That is an agreement on the part of the carrier to pay for any deficiency in quantity. Deficiency from what? From the quantity referred to in the bill of lading. This must be

understood to mean the quantity received. It is no more a guaranty that the captain received the whole quantity than the former part of the bill, which he is allowed to explain and to some extent contradict. It can only be understood as an agreement to pay for that portion, if any, which shall be found to be deficient of what he has received. If he is permitted, on the trial, to show that he did not receive the whole amount, and that he delivered all he received, there is no deficiency upon which such a clause can operate. We must conclude from the finding of the jury that the captain delivered to the defendant all the wheat received by him at Buffalo. It is immaterial where the error occurred in weighing. Such finding shows there was in fact no deficiency between the amount received and the amount delivered, and of course nothing to be paid for under that stipulation.

The only remaining question is whether the defendant had acted upon the faith of the bill of lading, so as to place him in the situation of one who has paid money upon it, and thereby to claim that the captain is estopped from showing that he did not receive the quantity mentioned in the bill.

The court refused to charge as requested, upon the ground that Horton, who gave the order for the wheat and who drew the draft, was the agent of the defendant, who was the owner and shipper of the wheat; that the draft was not paid on the faith of the bill of lading; and that the defendant did not refuse to pay the freight upon this ground.

The case shows that the bill of lading did not accompany the draft, but that the same was drawn for two purchases together, irrespective of the bill of lading. The payment was made on the account of Horton, and not on the faith of the bill of lading. The evidence would not have warranted the judge to charge the jury on this point as requested. As there is no objection to the mode in which the judge submitted the question to the jury, we must conclude there was no error in this respect.

The judgment should be affirmed.

DENIO, Ch. J. It is well settled upon authority that the part of a bill of lading which specifies the quantity of the goods shipped is not conclusive upon the carrier, but may be shown by extrinsic evidence to be incorrect. In this respect it is but a receipt, and not a stipulation of a written contract. The question was examined by this court in *Ellis* v. *Willard*, (5 Seld. 530,) where the prior authorities are referred to. The counsel for the defendant argues that the express provision contained in the bill of lading in this case, that "any damage or deficiency in quantity, the consignee will deduct from the balance of freight," created a distinction between it and the cases which have been decided. The words *deficiency in quantity* relate, I think, to the property shipped. This is inferable from its association with the term *damage*, which plainly has reference to delinquencies attributable to the carrier. No doubt it might be made a matter of an express contract that the carrier should account for the precise quantity acknowledged in the instrument, and that no other evidence on that point should be received. There are no words here indicating that such a stipulation was designed to be attached to this contract. Without the language relied on, the bill of lading would be presumptive evidence of the quantity, and the carrier, unless he could show a mistake, would be obliged to account accordingly. The special language does not, I think, alter the case.

The defendant further relies on the principle that a *bona fide* indorser of a bill of lading, advancing his money on it, may rely upon the quantity acknowledged, and may compel the carrier to account for that quantity, whether it was put on board or not. There is, no doubt, an established distinction in favor of a *bona fide* indorsee, grounded upon the doctrine of estoppel. By signing the bill of lading, acknowledging the receipt of a given quantity of merchandise, the master has enabled his shipper to go into market and obtain money on the credit of the shipment, and can not be permitted, as against a person so advancing, to set up his own

or the master's want of care at the expense of the indorsee, This results from the qualified negotiability of these instruments. (See *Dows* v. *Perrin*, 16 N. Y. Rep. 325; *Bates* v. *Todd*, 1 Moo. and Rob. 106; *Berkley* v. *Watkins*, 7 Ad. & El. 29.) But in the present case the defendant was not the purchaser of the property while it was in the hands of the carrier, and he did not make title to it through the bill of lading. His purchase of the wheat was made prior to the lading on board the canal boat, and the wheat was his property before and at the time it was placed on board. The purchase was of 7494 bushels from Horton, who engaged to ship it to the defendant. In making the shipment he was the defendant's agent, and his knowledge was the defendant's knowledge. If he failed to ship by this and the other boat the full amount which the defendant had purchased of him, he is still liable for the balance. That balance he · must be considered as having appropriated to his own use, unless he shall show that he has kept it on hand for him. There would be no justice in compelling the carrier to pay for the deficiency, if he is able to show that he never received it.

The jury have settled the question of fact against the defendant. A mistake occurred in some part of the transaction, either in the account of the wheat delivered on board, and which was entered in the bill of lading, or in the statement of the quantity delivered at Rochester, or the quantity deficient was lost by the carrier. The evidence upon these subjects was submitted to the jury, and they have found that the fault was not in the plaintiff. ·

It follows that the judgment of the Supreme Court ought to be affirmed.

All the Judges concurred, except Selden, J. who was for reversal.

. Judgment affirmed.