NORRIS and others vs. THE MILWAUKEE DOCK COMPANY.

BILL OF LADING: *How far conclusive against ship-owner : His remedy after compulsory payment for deficiency*. PLEADING.

1. If consignees act upon the faith of a bill of lading (as by making advances), the ship-owners are estopped as against them from denying the amount therein expressed, and are liable to them for any deficiency.
2. An allegation that by reason of the execution of a bill of lading for an amount in accordance with the representations of the shipper, plaintiffs (the ship-owners)

were compelled to and did make good to the consignees a certain deficiency, *held* a sufficient averment that the payment was not voluntary.

3. To show a cause of action, the complaint should allege, either that defendant's said representations were *fraudulently* made, or that plaintiffs had *demanded* payment for the deficiency.

APPEAL from the Circuit Court for *Milwaukee* County.

The facts stated in the complaint as the first cause of action, are as follows : Daniel Newhall had in store in defendant's elevator in Milwaukee, 20,413 bushels of wheat, and on the 6th of June, 1865, employed the plaintiffs to carry it to Buffalo in their vessel, and to that end directed defendant to deliver to the master, on board said vessel, the quantity of wheat above named ; and defendant thereupon weighed and delivered to said master, on board said vessel, a quantity of wheat, and its agents and servants then and there represented to said master that the amount of wheat so delivered was the number of bushels above stated ; and said master, confiding in such representation, thereupon executed and delivered to Newhall the ordinary bill of lading, expressing that Newhall had shipped on board said vessel said quantity of wheat to be carried to the port of Buffalo, and there delivered for account of Jacob H. Herrick & Co., New York, care of Wm. Petrie & Co., Buffalo ; but " there was a mistake committed by the agents and servants of the defendant, in the weighing and delivering of said wheat to said master," the real quantity delivered being only 20,154 bushels, which mistake was not discovered by the master until the arrival of the vessel at Buffalo, June 19th ; and " by reason of the execution of the said bill of lading in the manner and under the circumstances aforesaid, the plaintiffs were compelled to and did pay the value of 259 bushels of wheat to Wm. Petrie & Co.," the Buffalo consignees, to wit, $323.75. The facts stated as the second cause of action are precisely similar in character to those above stated ; but the alleged owner of the wheat shipped was Thomas Whitney, the quantity 21,000 bushels, which was to be delivered at the port of Buf-

falo " for account of Marshall & Ilsley or order, care of Bank of Attica, Buffalo ;" the deficiency, 232 bushels ; and the amount paid by plaintiffs, and claimed as damages, $299.

The defendant filed a general demurrer, and appealed from an order overruling it.

*E. Mariner*, for appellant :

The complaint not alleging that Newhall and Whitney ever delivered the bills of lading to the consignees, or to any one else, the presumption is that they still own the wheat. The signing and delivery of the bills of lading to Newhall and Whitney created no contract with the consignees. *Mitchell v. Ede*, 11 Ad. & El., 888. The payment of the alleged deficiency, therefore, upon the *facts* stated in the complaint, was voluntary. The mere statement that plaintiffs were *compelled* to pay, is a statement of a conclusion of law. *Clancey v. McEnery*, 17 Wis., 177. The payment to the Buffalo consignees was in fact a payment to Newhall and Whitney for wheat which they never shipped, and which appears to be yet in defendant's elevator. Between the parties to it, a bill of lading is not conclusive as to the quantity of the goods shipped. *Graves v. Harwood*, 9 Barb., 477 ; *Ellis v. Willard*, 5 Seld., 529 ; *Price v. Powell*, 3 Coms., 325 ; *Meyer v. Peck*, 28 N. Y., 590 ; Abbott on Shipping, 401 et seq. 2. The complaint does not show any privity of contract between the parties. The plaintiffs must declare on contract (which they have not done), or in tort for a misrepresentation, in which case a *scienter* must be averred. Smith's L. C., 178, 202 ; *Paisley v. Freeman*, 2 id., 157 ; *Smith v. Mariner*, 5 Wis., 551, and cases there cited.

*Emmons & Van Dyke*, for respondents, argued that the case presented was the ordinary one of relief sought against a mutual mistake of fact, where it is not necessary that there should be any presumption of fraud. 1 Story's Eq. Jur., §§ 142 et seq. The parties to the bills of lading were Newhall and Whitney on the one side, and the master of the vessel on the other.

They shipped for account of third parties, Herrick & Co. and Marshall & Ilsley.   It was tantamount to a transfer of the bills in case the shipment had been made to or for Newhall and Whitney.   The allegation that by reason of having executed such bills of lading in such manner and form, plaintiffs were *compelled* to pay the value of the short wheat, is equivalent to saying that Herrick & Co. and Marshall & Ilsley had, by reason of advances, purchased or otherwise become so related to the cargo, that the master could not dispute his receipt.

CoLE, J.   In view of the matters set forth in the complaint, it is not a fair deduction to say that the payment by the respondent to the consignees was voluntary.   It is alleged, in substance, that the master signed the bills of lading expressing that the consignors had shipped at Milwaukee on board the vessel a given quantity of wheat in each case; that the wheat was to be carried to the port of Buffalo, and there delivered for account of the consignees; that by reason of the execution of the bills of lading in the manner and under the circumstances therein stated, the respondents were compelled to and did make good the deficiency to the consignees.   Assuming it to be true that the bills of lading would not be conclusive as between the original parties as to the quantity of wheat shipped, and that any mistake as to the amount might be shown as between them, still if third parties had acted upon the faith of the bills of lading, as by making advances upon them, then it is well settled the respondent would be estopped from alleging a deficiency in the quantity of wheat shipped. *Ellis v. Willard,* 5 Selden, 529 ; *Meyer v. Peck,* 28 N. Y., 590, and authorities there referred to.   And from the allegations that the wheat was to be delivered for the account of the consignees, and that the respondents were compelled to make good the deficiency, we infer that the consignees had in some way become interested in the wheat, either as assignees of the bills of lading for

value, or by paying money upon them, so that the respondents were under some legal liability to make up the quantity the bills of lading called for. In this view, their payments cannot be said to be voluntary.

It is not perhaps absolutely clear, upon what ground the respondents expect to recover. There are some matters in the complaint which would sustain the theory that the pleader intended the action to be in the nature of a special action on the case. In this aspect it has been argued to some extent by the counsel for the appellant, who contends that if it is a special action on the case, then the complaint is defective, because it is not alleged that the agents of the company *fraudulently* misrepresented the quantity of wheat shipped on board of the vessel. The allegations bearing upon this point of representation are, in substance: that Newhall and Whitney ordered the defendant to deliver to the master on board the plaintiffs' vessel the quantity of wheat which they severally owned at the time in store in the defendant's elevator; that the defendant weighed and delivered to the master on board the vessel a quantity purporting to be the amount it was ordered to deliver in each case; that the agents and servants of the defendant then and there represented to the master that the real amount of wheat weighed and delivered was, &c.; that the master, confiding in such representation, thereupon executed and delivered to the shipper the bills of lading expressing, &c. It will be seen that there is not here any allegation that such representation in respect to the quantity of wheat weighed and delivered, was false to the knowledge of the agents of the defendant, or that the agents acted fraudulently and against good faith in making it. Upon the authorities, some such allegation would seem to be necessary, if the object of the action is to recover damages sustained in consequence of the false and fraudulent representations made by these agents of the quantity of wheat weighed and delivered. But it is not claimed

that the representation in respect to the quantity of wheat delivered was fraudulent, or was. made with any purpose or design to deceive.   It doubtless sprung wholly from mistake in weighing the wheat, and the complaint so in effect states.   The case presented, therefore, being one of a mutual mistake of fact, without any presumption of fraud, do the facts show that the respondents are entitled to recover for the deficency ?   It seems to us not.   No demand is alleged in the complaint, which we think essential in order to maintain the action.   We are not entirely clear, and do not wish to be understood as distinctly deciding, that they could maintain an action for the deficiency even upon alleging and proving a previous demand. But we are satisfied that if they can recover at all, they can only do so upon a demand being shown.   For the failure to deliver the whole quantity of wheat in the first instance was the result of a mere mistake.   Of course the company is liable to make good the deficiency, either to Newhall and Whitney or to the respondents.   Suppose the title to the short wheat to be in the respondents, because they have accounted to the consignees for its value, or for any other reason : yet they ought to inform the company of the mistake in the delivery, and give it an opportunity of correcting the mistake, before bringing suit.   Had Newhall and Whitney brought their respective actions for the deficiency; it might, perhaps, with some reason have been argued, that they need not show any demand ; that it was the duty of the company to deliver the entire quantity on their orders ; and that hence no subsequent demand by them was necessary.   But the respondents have made no demand for the deficiency since the title became vested in them, if it ever did. And therefore, in the most favorable view which can be taken of the case for the respondents—that, as the result of the various matters stated, the property has passed to them, and that they must be regarded as the owners of the deficiency, and not Newhall and Whitney—we still think that they must show

a demand before they can recover for the value of the short wheat.

*By the Court.*—The order overruling the demurrer is reversed, and the cause remanded for further proceedings.