ELISHA A. ABBE, Respondent, v. WILLIAM EATON, Appellant.

A common carrier is not concluded by the statement in a bill of lading of the amount of goods delivered to him. It is *prima facie* evidence merely, and may be explained or contradicted by parol evidence.

To preclude a carrier or a shipper from showing by parol a mistake in the quantity, as specified, the language must be clear and explicit.

A bill of lading containing this clause, "all damages caused by boat or carrier, or deficiency of cargo from quantity, as herein specified, to be paid by the carrier and deducted from the freight, and any excess on the cargo to be paid for to the carrier by the consignees,"—*Held*, that this was not a guaranty of the quantity specified, or an agreement that the bill of lading should furnish the only evidence of the quantity; that no damages could have been sustained in case the carrier delivered all that he received, and upon such delivery the carrier's liability was discharged.

Where by a bill of lading the property is to be delivered to the consignee upon payment of freight, the consignee receiving the property is liable for the freight.

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial district, affirming a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought to recover a balance alleged to be due for freight upon a load of corn from Buffalo to Albany. The bill of lading provided for a delivery of the corn to the consignees upon payment of freight, and contained the following clause: "All damages caused by boat or carrier, or deficiency of cargo from quantity, as herein specified, to be paid for by the carrier and deducted from the freight, and any excess on the cargo to be paid for to the carrier by the

Opinion of the Commission, per EARL, C.

consignees." The bill of lading stated the quantity of corn at 7,200 bushels.

When the corn reached Albany and was weighed, it was found by the weight to be a fraction over seventy-one bushels short of the amount specified in the bill of lading; and the claim on the part of the defendant, that the plaintiff should allow the value of this upon the freight, gave rise to the controversy in this action, the value of this corn being at least equal to the balance of freight due. Plaintiff gave evidence showing that all the corn secured was delivered by him. The substance thereof is stated in the opinion.

*Lyman Tremain* for the appellant. The positive testimony of an unimpeached, uncontradicted witness should be credited, and has the effect of overcoming a presumption. (*Elwood* v. *W. U. Tel. Co.*, 45 N. Y., 553; *Newton* v. *Pope*, 1 Cow., 110; *Lomer* v. *Meeker*, 25 N. Y., 361; *Dolsen* v. *Arnold*, 10 How. Pr., 532; *Rudd* v. *Davis*, 3 Hill, 287; affirmed in Ct. of Errors, 7 id., 529; *Mason* v. *Lord*, 40 N. Y., 484.) The referee erred in not granting the plaintiff's two motions for a nonsuit. (*Lomer* v. *Meeker*, 25 N. Y., 363; *Elwood* v. *W. U. Tel. Co.*, 45 id., 553.)

*Pomeroy & Southworth* for the respondent. The consignee who received the goods is thereby liable for the freight. (4 Den., 114.) A bill of lading as a contract cannot be altered, varied or explained by parol evidence. (3 Sandf., 7.)

EARL, C. The referee found that 7,200 bushels of corn were shipped on the plaintiff's boat at Buffalo, and that he delivered the same quantity at Albany. It is claimed on the part of the appellant that the finding, that plaintiff delivered 7,200 bushels of corn at Albany, is against the undisputed evidence, and therefore erroneous, and this is the first question to be considered. The defendant in his answer admitted that 7,200 bushels were shipped upon the boat at Buffalo, and he cannot, therefore, dispute the truth of that admission. The

plaintiff gave evidence tending very strongly to show that he delivered at Albany all the corn he received at Buffalo. The plaintiff was on the boat all the time upon her passage to Albany, except about ten hours; and he testified, from his knowledge and from the manner in which the boat was loaded and the corn secured therein, that it was not possible for any corn to have been taken from the boat without his knowing it, and that none was taken. Another witness for plaintiff testified that he was on the boat all the time, and that no corn was taken off from her, and that none could have been taken without his knowledge. If these witnesses were truthful, it was shown quite satisfactorily that all the corn was delivered at Albany which was received by plaintiff at Buffalo. The defendant gave evidence tending to show, quite satisfactorily, that the corn when delivered at Albany was properly weighed, and that there was only 7,128$\frac{4.0}{5.6}$ bushels. It was, however, possible, though not probable, that there was some mistake in the weight at Albany. The referee, then, had before him the admitted fact that 7,200 bushels were shipped at Buffalo; the proof on the part of the plaintiff tending to show that he delivered at Albany all he received at Buffalo, and the proof on the part of the defendant tending to show that by the weight at Albany only 7,128$\frac{4.0}{5.6}$ bushels were actually delivered, and he was to decide as a question of fact how much was actually delivered at Albany. Taking the admitted fact that 7,200 bushels were loaded on the boat at Buffalo, if he believed plaintiff's witnesses, the same quantity was delivered in Albany; if he disbelieved plaintiff's witnesses, and believed defendant's witnesses as to the weighing at Albany, then a less quantity was delivered. It is thus seen that it was a question of fact for the referee to determine, upon all the evidence and circumstances, how much corn was delivered at Albany, and we cannot disturb his finding that the quantity was 7,200 bushels.

But if we should hold that the proof positively established that only 7,128$\frac{4.0}{5.6}$ bushels were delivered at Albany, the defendant would still be without a defence. There was no

proof as to how the quantity of corn was ascertained at Buffalo, and no evidence as to the quantity, except what was furnished by the bill of lading. As stated above, the proof tended strongly to show that none of the corn was taken from the boat on the trip to Albany, and that the plaintiff delivered at Albany all he received at Buffalo, and the referee so found; and hence we must assume, as upon the facts of the case is the most probable, that there was a mistake in the weight at Buffalo, and that 7,200 bushels were not in fact there delivered to the plaintiff. The plaintiff is not concluded by the amount stated in the bill of lading. As to the quantity of goods delivered to a carrier, the bill of lading furnishes *prima facie* evidence only, and is always open to contradiction and explanation by parol evidence, like any receipt. (*Wolfe* v. *Myers*, 3 Sand. Sup. Court R., 7; *Meyer* v. *Peck*, 28 N. Y., 590.) In the case of *Meyer* v. *Peck* it was held that a stipulation in a bill of lading that "any damage or deficiency in quantity, the consignee will deduct from balance of freight due the captain" will not be understood as a guaranty that the captain had received the whole quantity of goods specified, or as an agreement to pay for that portion, if any, which should be found to be deficient from the quantity specified. That case is an authority in point in this. The language used in this bill of lading is: "All damage caused by the boat or carrier, or deficiency of cargo from quantity, as herein specified, to be paid by the carrier and deducted from freight." Here is on agreement that the carrier will be bound by the quantity specified, or that the bill of lading shall furnish the only evidence of the quantity. Such an agreement might, doubtless, be made by a carrier; but the language used would have to be quite clear and explicit to preclude the carrier from showing by parol a mistake in the quantity. The language used here is no stronger than that used in the case of *Meyer* v. *Peck*. The only additional words here are "as herein specified." But the words used in the bill of lading in that case were held to mean the same thing. The word "quantity," there, clearly meant the quantity specified in the bill of

lading; and the agreement of the parties was construed to be that the carrier should deliver the quantity he actually received. There the carrier, according to the bill of lading, received 5,589 bushels, and agreed to carry that quantity to its destination; and the "deficiency in quantity" spoken of had reference, clearly, to this quantity; and yet the carrier was permitted to show a mistake in the quantity specified, and to defend, upon the ground that he delivered all the wheat which was received by him. Here the plaintiff, according to the bill of lading, received 7,200 bushels of corn, and agreed to deliver that quantity at its destination; and he agreed that any deficiency from the quantity specified might be deducted from the freight. The same reasoning which showed that the carrier in that case had the right to prove a mistake in the quantity delivered to him would apply in this case. There is another view of the language used in this case which strongly favors the construction of the plaintiff. He did not agree to pay absolutely for any deficiency from the quantity specified. He simply agreed to pay "all damage" caused by the deficiency. Now, so long as the carrier delivered at its destination all the corn he received, there could be no damage, in any proper sense of the term. The parties in interest could only be damaged by the abstraction or loss of some of the corn after its delivery into the charge of the plaintiff. As well said by Judge DENIO, in *Meyer* v. *Peck*, damage "has reference to delinquencies attributable to the carrier," and not to a mistake in quantity, which has harmed no one.

It is claimed on the part of the appellant that his view of this clause in the bill of lading is strengthened by the other clause, which provides that "any excess in the cargo to be paid for to the carrier by the consignees." I do not perceive the precise purpose of this clause, unless it was to provide that the carrier should receive freight upon any additional quantity above what is specified in the bill of lading. If it was intended by the parties that the carrier should have, as his own, the value of any corn over and above the amount

specified, whether there was any mistake in the amount or not, the language expressing such an intent would have to be very strong and explicit. To hold, under such a bill of lading, that if there happened by mistake, in weighing at Buffalo, to be 500 bushels more than was specified, the carrier could claim this quantity, and the shipper would be precluded from showing any mistake, would violate principles of law and equity.

Hence, whether upon the evidence of this case we hold that the plaintiff delivered 7,200 bushels at Albany, or that he delivered there a less quantity, but all he received at Buffalo, we reach the same conclusion, adverse to the defendant.

The only remaining question is whether the defendant was the proper person to be sued for the freight. This corn was, by the bill of lading, to be delivered to the consignee upon payment of freight; and, in such case, the consignee receiving the cargo becomes liable to pay the freight. (*Merian v. French*, 4 Denio, 110.) It does not appear clear to me, under these bills of lading, who was the consignee named in them. But the defendant, in his answer, admitted that he was the consignee, and that the corn was delivered to him. Hence, he became liable for the freight.

This view leads to an affirmance of the judgment, with costs.

All concur.

Judgment affirmed.