MERRICK and others *vs.* ABOUT NINETEEN THOUSAND FIVE
HUNDRED AND FOURTEEN BUSHELS OF WHEAT, etc.

*(District Court, N. D. New York.   July 16, 1880.)*

1. BILL OF LADING—RECITAL—STIPULATION.—A recital in a bill of lading
   that the cargo, when received, consisted of 20,000 bushels, is conclus-
   ive, when such bill of lading also contained the stipulation that "all
   the deficiency in the cargo shall be paid for by the carrier and deducted
   from the freight, and any excess in the cargo shall be paid for to the
   carrier by the consignee."
       *Meyer* v. *Peck,* 28 N. Y. 590, considered.
       *Abbe* v. *Eaton,* 51 N. Y. 410, criticised.

*Williams & Potter,* for libellants.

*Bowen, Rogers & Locke,* for claimants.

WALLACE, D. J.   The authorities are uniform to the effect
that, as between the original parties to an ordinary bill of
lading, that part of the instrument which recites the receipt
of the goods, and their condition and quantity when received,
is open to explanation; and, while the recitals are *prima facie*
evidence of the facts recited, they are not conclusive.   The
instrument is in part an acknowledgment and in part a con-
tract.   That part which is an acknowledgment merely is no
more conclusive than any other acknowledgment or declara-
tion.   That part which is a contract is final.   Bills of lading,
however, sometimes contain stipulations intended to make
the recitals a part of the contract, and as conclusive as the
rest of the contract; and as the parties to such a contract
have the right to agree that the recitals as to the condition and
quantity of the cargo shall be conclusive, the courts will give
to the stipulations the effect intended by the parties.   When
the language of the stipulation is clear, the court has no duty
but to give effect to it, and it is only when the language em-
ployed is capable of different meanings that it becomes
necessary to resort to precedents and rules of construction in
order to interpret the contract.

In this case the bill of lading recites the receipt of 20,000
bushels of No. 1 spring wheat, in good order and condition,

on board the schooner, and stipulates that "all the deficiency in the cargo shall be paid for by the carrier and deducted from the freight, and any excess in the cargo shall be paid for to the carrier by the consignee." It does not expressly provide that the recital that the cargo, when received, consisted of 20,000 bushels, shall be conclusive, and the question is whether this is to be implied from the language used.

On first impression it would certainly seem that the bill of lading would not contain any such stipulation if it was not intended that the deficiency provided for should be that arising from the cargo as represented by the carrier. Otherwise, there was no necessity for inserting the stipulation at all, because the consignee, without any express stipulation, has the right to deduct from the freight a deficiency in the cargo actually received by the carrier and arising from his fault, (*Davidson* v. *Gwynne*, 12 East, 381; *Sheels* v. *Davis*, 4 Camp. 119; *Edwards* v. *Todd*, 1 Scammon, 462–463; *Leech* v. *Baldwin*, 5 Watts, 446;) and it is not reasonable to suppose that the parties meant to insert a useless condition in a contract.

But the inference to be drawn from this consideration is not so strong as to be decisive, and a court of high authority has held that where, in a bill of lading, the stipulation was that "any damage or deficiency in cargo the consignee will deduct from balance of freight," the words "deficiency in cargo" referred to the cargo actually received, and not to the cargo described in the bill of lading. *Meyer* v. *Peck*, 28 N. Y. 590. That decision was not made by a unanimous court, but it has been accepted and followed by several subsequent cases in the same court.

In the present case, however, the stipulation very plainly shows that the parties had in contemplation the cargo described in the bill of lading, and not the cargo which might have been actually received, because the stipulation provides that the consignee shall pay the carrier for any excess in the cargo. "Excess" and "deficiency" in the stipulation refer to the same "cargo," and what excess could there be except as to the cargo recited in the bill of lading? There could be no

excess in the cargo actually received. This consideration appears to have been overlooked in the case of *Abbe* v. *Eaton*, 51 N. Y. 410, which, with *Meyer* v. *Peck*, are the two cases most nearly in point upon the question now presented. In *Abbe* v. *Eaton* the stipulation was as follows: "All damages caused by boat or carrier, or deficiency of cargo from quantity as herein specified, to be paid for by the carrier, and deducted from the freight, and any excess on the cargo to be paid for to the carrier by the assignee;" and it was held this was not an agreement that the bill of lading should furnish the only evidence of the quantity. Some emphasis is placed on the word "damages," in the opinion in this case, and it is suggested that the stipulation should be read as though the carrier were to pay for such a deficiency only as might result from his own act and cause damage to the consignee.

Neither of these authorities are precisely in point. I am not disposed to dissent from *Meyer* v. *Peck*, but in *Abbe* v. *Eaton*, as it seems to me, the obvious meaning of the contract, as evinced by the language employed, has been made to give way to an artificial construction which is not sound, according to technical rules of construction. The bill of lading provided that a deficiency in the cargo, as specified in the bill, should be paid for by the carrier, and an excess should be paid for by the consignee. The parties had a right to make just such a contract. It was a contract well calculated to prevent the constant disputes and litigation arising with reference to shortage between carrier and consignee. The carrier has an ample opportunity to guard against mistakes, and so has the shipper; but the consignee is entirely in the dark as to whether the cargo agreed to be delivered has been actually laden, or whether it has disappeared on the trip. It is just that the consignee should pay for what he actually receives, whether more or less in quantity than is expressed in the bill of lading, and it is just that the carrier should be held concluded by his admissions as to facts completely within his own knowledge, and of which the consignee is ignorant. I am unable to see what language could be chosen

more appropriately to express just such a contract than was employed in that case.   The stipulation is that the deficiency or excess to be deducted or paid for shall be that in the cargo, as specified in the bill of lading, not in that to be ascertained from other sources of inquiry; and unless this was just the meaning of the stipulation it means nothing, because everything else is covered by the other branch of the stipulation, which provides that the consignee may deduct from the freight all damages to the cargo caused by the carrier.

In the present case the parties stipulated that a deficiency in a cargo, described as 20,000 bushels of wheat, should be deducted from the freight by the consignee, while an excess should be paid for to the carrier.   It seems to me plain that the parties intended what they said, and expressed what they intended; and, while I am reluctant to differ from a court of such high authority as that which decided *Abbe* v. *Eaton,* I am constrained to believe that, even were that case precisely like the present, it would be my duty to give effect to what seems to me plainly to have been the meaning of the contract.

Upon the ground that the carrier was bound by his stipulation to deduct the deficiency from the cargo, as described in the bill of lading, and upon this ground only, I am of opinion the recovery of the libellant should be limited to the amount of his freight, less the value of the shortage, and order judgment accordingly, with costs to the claimants.