BROUTY *v.* FIVE THOUSAND TWO HUNDRED AND FIFTY-SIX BUNDLES OF ELM STAVES, etc.

*(District Court, N. D. New York. 1884.)*

1. CARRIER OF GOODS—BILL OF LADING—QUANTITY OF GOODS SHIPPED.
     A bill of lading is not conclusive upon a carrier of goods as to the quantity received for carriage, but, like other receipts, may be explained.

2. SAME—EVIDENCE OF LOSS OF GOODS—ACTION TO RECOVER FREIGHT—OFFSET.
     Upon examination of the evidence in this case, *held,* that it does not show conclusively that the alleged loss of a portion of the cargo occurred while the same was on the schooner, and that damages for such loss could not, in the absence of proof that the carrier was at fault, be allowed as an offset in an action to recover the freight.

In Admiralty.
*Cook & Fitzgerald,* for libelant.
*Marshall, Clinton & Wilson,* for claimant.

COXE, J. This is an action for freight. The defense is non-delivery of a part of the cargo. On the tenth of May, 1884, the libelant, who is the owner and master of the schooner Seabird, for and in consideration of the sum of $121.35, agreed to convey from New Baltimore, Michigan, to Buffalo, New York, certain property described in the bill of lading as "5,256 bundles of staves and 259 barrels of heading." As no tally was made at New Baltimore, the only evidence at

that time of the number placed on board is furnished by the bill of lading. On or about the sixteenth of May the Seabird arrived at the port of Buffalo. The consignee was duly notified and the cargo immediately discharged. The greater portion thereof was, the same day, placed in freight cars by stevedores employed by the claimant. Two and a half car-loads, however, remained on the dock all night. When the cars were loaded they were sealed, and were soon afterwards, by order of the claimant, conveyed to his manufactory, five or six miles from the dock, where they remained on a siding till June 28th. On that day a tally was commenced, which was not completed till July 5th. It was then that the deficiency of 631 bundles of staves and 5 barrels of heading was discovered. So far as is disclosed by the evidence, no other authentic tally was made at any time. The claimant refused to pay the freight until the libelant furnished him a statement showing that the full number called for by the bill of lading had been delivered. He now seeks to offset against the freight the value of the missing property. There is no theory upon which he should be permitted to do this. The libelant did all that he was bound to do. There is not a particle of evidence that any of the cargo was lost, stolen, or destroyed while in his possession. It was not of a character to excite the cupidity of seamen. It could not be secreted or easily carried away, and it is absurd to suppose that it was wantonly destroyed. No motive, or opportunity even, for fraud has been shown; no negligence has been proved. Indeed, nothing has been found in the testimony which would justify the court in the shadow of a suspicion against the libelant or any of his crew. Every witness who speaks upon the subject swears that all of the cargo put on board the Seabird at New Baltimore was delivered at Buffalo. This fact must be regarded as conclusively established.

It is argued for the claimant that the libelant is concluded by the allegations of his libel and the statement in the bill of lading signed by him. That having receipted for 5,256 bundles and 259 barrels, he will not now be permitted to say that a less number was placed on his vessel. Assuming this position to be well founded, there is not, as before stated, sufficient to charge the loss upon the libelant. The tally, showing the alleged deficiency, was not made until after the property had remained six weeks in freight cars on a side track in a populous city. The libelant may, with reason, retort that if presumptions and suspicions are to be indulged in, it is quite as reasonable to suppose that the loss occurred during the six weeks that the property was on land as during the one week it was on the water. Had the claimant brought an action for damages founded upon such proof, it would have been the duty of the court to dismiss it. The evidence is too speculative and conjectural. But the bill of lading is not conclusive upon the libelant; like other receipts it may be explained. *Abbe* v. *Eaton*, 51 N. Y. 410. It would be an intolerable doctrine

to hold the carrier irrevocably bound by every statement signed by him in the bustle and excitement of commerce. He should always be permitted to show the truth. Whether the mistake or loss occurred at New Baltimore or Buffalo is not material so long as no fault can be imputed to the libelant.

There should be a decree for the libelant, with costs.