ALBERT H. FORD, RESPONDENT, v. GEORGE W. HEAD
AND DWIGHT D. WINSTON, APPELLANTS.

*Bill of lading — construction of a clause requiring the consignees to pay the carrier for
any excess in the cargo.*

The plaintiff delivered to the defendants, at Utica, a cargo of corn which he had
   carried from Buffalo under a bill of lading which provided, that in considera-
   tion of the rate of freight therein named, and of the fact that the carrier
   had supervised the weighing of the cargo on board, it was agreed between the
   carrier and shipper and assigns "that the bill of lading shall be conclusive as
   between shippers, and assigns and carriers, as to the quantity or cargo received
   on board and to be delivered at port of destination, and that they will deliver
   the full quantity herein named. All damage caused by the boat or carrier, or
   deficiency in the cargo from quantity as herein specified, to be paid for by the
   carrier and deducted from the freight, and any excess in the cargo to be paid
   for to the carrier by the consignees." When the cargo was discharged an
   excess of fifty-five bushels was found. The plaintiff claimed that under the
   bill of lading this belonged to him and that the defendants were bound to pay
   him the value thereof.
*Held,* that his claim could not be sustained; that the clause providing that any
   excess in the cargo was to be paid for to the carrier by the consignee only
   required the latter to pay the freight on such excess at the stipulated rate.

APPEAL from a judgment in favor of the plaintiff, entered upon
the verdict of a jury, and from an order denying a motion for a
new trial made upon the minutes of the justice before whom the
action was tried.

Action was brought to recover freight and for an alleged surplus
of fifty-five bushels of corn upon a cargo thereof carried by the
plaintiff on a canal boat from Buffalo to the defendants at Utica,
under a bill of lading dated November 17, 1880.

*S. J. Barrows,* for the appellants.

*E. L. Stevens,* for the respondent.

HARDIN, P. J.:

Two questions were litigated at the circuit; the first relates to
the construction to be given to the bill of lading, and the second as to
the sufficiency of a tender of $125.08, made by the defendants by
their check, dated May 25, 1881. We will consider the one relating
to the bill of lading first. That instrument must be construed, in

order to meet the points made at the circuit and the arguments addressed to us by the counsel ·of the respective parties. We will quote from the bill of lading, viz. :

"And it is agreed between the carriers and shippers and assigns that in consideration, especially of the rate of freight herein named, the said carriers having supervised the weighing of 'said cargo on board, hereby agree that this bill of lading *shall be conclusive*, as between shippers and assigns and carriers, as to the quantity or cargo received on board, *and to be delivered* at port of destination, and that they will deliver the full quantity hereon named. All damage caused by the boat or carrier, or deficiency in the cargo from quantity as herein specified, *to be paid* for by the carrier and deducted from the freight, *and any excess in the cargo to be paid for to the carrier by the consignees.*"

When the cargo was discharged it was weighed and found, as the verdict indicated, to contain 8,455 bushels, an excess of fifty-five bushels of corn over what the bill of lading called for. Plaintiff's contention is that he was entitled to collect pay for the value of the fifty-five bushels in excess of the quantity stipulated in the bill of lading. Defendants' contention is that the bill of lading is to control the quantity as stated, and that they were only required to pay freight on 8,406 bushels, and were not bound to pay anything by reason of the excess.

It was said in *Meyer* v. *Peck* (28 N. Y., 590), that an ordinary bill of lading " is not conclusive as between the original parties, either as to the shipment of the goods named in it or as to the quantity said to have been received, and any mistake or fraud in the shipment of the goods may be shown." That case was followed in *Abbe* v. *Eaton* (51 N. Y., 410). The language of the bill of lading quoted by us in this case is unlike that found in *Meyer* v. *Peck* (*supra.*)

In *Abbe* v. *Eaton* (*supra*), the bill of lading contained a provision similar to that found in the bill of lading in this case, and upon it the court commented as follows : " It is claimed on the part of the appellant that his view of this clause in the bill of lading is strengthened by the other clause which provides that ' any excess in the cargo (is) to be paid for to the carrier by the consignees.' I do not perceive the precise purpose of this clause, unless it was to provide

that the carrier *should receive freight* upon any additional quantity *above* what is specified in the bill of lading. If it was intended by the parties that the carrier should have as his own the value of any corn over and above the amount specified, whether there was any mistake in the amount or not, the language expressing such an intent would have to be very strong and explicit. To hold under such a bill of lading that if there happened by mistake, in weighing at Buffalo, to be 500 bushels more than was specified, the carrier could claim this quantity and the shipper would be precluded from showing any mistake, would violate principles of law and equity."

While it may be said that the case from which we have just quoted is not decisive of the point here made, we regard the language used as being suggestive of the construction to be given to the bill of lading before us.

We are of the opinion that all the language of the stipulations considered together, and due effect being given to them and to the object the parties had in view in their use, requires us to hold that the title to the excess of corn over the specified bushels was not transferred to the carrier and he authorized to sell it as his own to the consignees, and upon such transfer to compel the consignees to pay its value. We therefore are of the opinion that the trial judge fell into an error in ruling to that effect. We think all that the carrier can justly claim under the language of the bill of lading is compensation for the freight of the additional bushels carried by him. He stipulated he had received 8,400 bushels, and as to his obligation to deliver that quantity the language of the bill of lading was conclusive, in the absence of clear mistake or fraud; it doubtless was *prima facie* evidence of the true quantity received. (*Ellis* v. *Willard*, 5 Seld., 529; *Meyer* v. *Peck*, 28 N. Y., 596.) The payments which were produced, provided to be made by the consignee to the carrier, were for freight. When the surplus of bushels was ascertained the excess in the cargo upon which freight was to be paid was apparent, and the amount of freight, at the price of four and one-half cents, as stipulated, per bushel, was "to be paid for to the carrier by the consignee."

It follows, therefore, that the circuit judge erroneously ruled "that when the plaintiff delivered 8,400 bushels he satisfied his contract and the balance belonged to him." What was the effect of

this erroneous ruling? The parties were led to give evidence *pro* and *con.* as to the excess. The plaintiff claimed there was fifty-five bushels and the defendant disputed it and insisted there was no excess or, if any, not more than twenty-three bushels. The disputed questions in regard thereto were submitted to the jury, and from their verdict it is apparent they found the excess to be fifty-five bushels. Their verdict was for freight, " $125.08, and the value of fifty-five bushels of corn at sixty cents a bushel and interest on both sums from the 25th of May, 1881," in all, $166.75. (Defendant's brief.) Whereas, according to our views, already expressed, the verdict should only have been for $125.08 and interest balance, and four and one-half cents for freight on fifty-five bushels, viz., two dollars and forty-seven cents, and interest from May 25, 1881, or, in other words, for balance of unpaid freight, to wit, $127.55, and interest from May 25, 1881. If the views already expressed are correct, it is not important to consider the questions made at the trial of the tender and its payment into court, as it was not for an amount equal to the right of plaintiff's recovery. We have looked at the rulings made in respect to the admission and rejection of evidence upon the trial, and have found no error calling upon us to interfere with the verdict. We think there was evidence before the jury sufficient to warrant their finding of fifty-five bushels of " excess in cargo " over 8,400 bushels named in the bill of lading?

We have, therefore, come to the conclusion to reverse the judgment and order unless the plaintiff shall stipulate to reduce the verdict to $127.55 and interest thereon from May 25, 1881, in which case the judgment and order will be affirmed without costs of this appeal to either party.

Judgment and order reversed and a new trial ordered, with costs to abide the event, unless plaintiff stipulates to reduce the verdict and judgment to $127.55 and interest thereon from May 25, 1881, in which case the judgment as so modified is affirmed, without costs of this appeal to either party.

MERWIN, J., concurred; FOLLETT, J., not sitting.

So ordered.