**In re GRAND JURY PROCEEDINGS.**
**No. M–425.**

District Court, E. D. Pennsylvania.
July 29, 1933.

Randolph C. Shaw and Norman J. Morrisson, Sp. Assts. to Atty. Gen., for the United States.

Harold Simandl, of Newark, N. J., for petitioner Union City Brewing Co., Inc.

KIRKPATRICK, District Judge.

On July 14, 1933, I entered an order relating to the testimony of George Leo Meyers and Harold Meyers, who had appeared and testified before the grand jury of this court sitting in Philadelphia in an investigation in the course of which a number of indictments have been returned charging a large number of persons with conspiracy to violate the National Prohibition Act. The relevant portion of the order is as follows: "Consent of this Court is given for the use of the said testimony by the Government and the disclosure of the same by the stenographer who reported it."

The present petition is for the vacation of this order and to restrain the stenographer and the government attorneys from disclosing the testimony. A demurrer to the petition was filed by the United States attorney.

The petitioner is Union City Brewing Company, a New Jersey corporation, and the petition recites:

That proceedings are pending in New Jersey for the revocation of the petitioner's beer permit; that one of the matters involved in those proceedings is the purchase of a bottling equipment unit which was sold to the petitioners by the two Meyers; that the government had attempted to get information from the Meyers about the purchase and that the Meyers had refused to give it; that for the purpose of obtaining the testimony of these two witnesses so that it might be subsequently offered in the revocation proceeding, the Assistant Attorney General of the United States subpœnaed the witnesses and that in obedience to the subpœna the witnesses appeared and testified before the grand jury.

The standing of the petitioner here is more than doubtful. In Blair v. United States, 250 U. S. 273, 39 S. Ct. 468, 63 L. Ed. 979, the witness himself was not allowed to question the jurisdiction of the grand jury. However, in view of the well-considered arguments presented, as well as some apparent misunderstanding of the scope of the order, I take the opportunity to re-examine the question.

1. The petition charges that the grand jury was without power to summon and interrogate the witnesses.

Naturally, the petitioner does not attempt to define the lawful scope of the inquiry which this grand jury is conducting. There are no precisely defined issues before a grand jury exercising its inquisitorial powers by which its jurisdiction may be limited. The decision of the Supreme Court in Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 375, 50 L. Ed. 652, has settled beyond all question that in the federal courts an investigation by the grand jury need not be preceded by any definition whatever of the crimes to be investigated or the persons against whom an accusation is sought. Of course, there are limits to the power, but they are wide. "Doubtless," said the court, "abuses of this power may be imagined," but the only example of such abuses which occurred to the court was prying into the details of domestic or business life. This court knows from the indictments already found that the subject-matter of the inquiry in which this grand jury is engaged is, in part at least, the existence of widespread corruption, crime, abuses, and evasions having to do with the National Prohibition Act (27 USCA). Beyond all question it had power to summon these witnesses and interrogate them upon their sale of brewery equipment.

The inquisitorial power of the grand jury is the most valuable function which it possesses to-day and, far more than any supposed protection which it gives to the accused, justifies its survival as an institution. As an engine of discovery against organized and far-reaching crime, it has no counterpart. Policy emphatically forbids that there should be any curtailment of it except in the clearest cases.

Granted that there was no inherent want of jurisdiction, the only thing left is the suggestion that the officers of the government in summoning these witnesses desired and intended, if permitted by the court, to use their testimony in another proceeding also being conducted by the government. There is no suggestion of any corrupt motive or of any desire to further private interest. In view of the facts fully stated in the petition, the allegations of bad faith are mere conclusions. What the petitioner calls an "ulterior purpose" will appear in any case in which the government wishes to use the testimony of witnesses before a grand jury in some other proceeding, and it is a matter of indifference whether it be formed before or after the testimony was given. It has nothing whatever to do with the power of the grand jury to call the witnesses and take their testimony.

2. The petition charges that the testimony is privileged and that public policy prohibits its disclosure.

It is sufficient to say that the rule of secrecy has long since been relaxed by permitting disclosure whenever the interest of justice requires. The determination of this matter necessarily rests largely within the discretion of the court whose grand jury is concerned. U. S. v. Farrington (D. C.) 3 F. 343; Atwell v. United States (C. C. A.) 162 F. 97, 17 L. R. A. (N. S.) 1049, 15 Ann. Cas. 253; U. S. v. Perlman (D. C.) 247 F. 158; In re National Window Glass Workers (D. C.) 287 F. 219; Metzler v. United States (C. C. A.) 64 F.(2d) 203. It is my considered judgment that the ends of justice can be furthered by permitting the disclosure of this testimony.

The rule of secrecy, it will be noted, was designed for the protection of the witnesses who appear and for the purpose of allowing

a wider and freer scope to the grand jury itself, and was never intended as a safeguard for the interests of the accused or of any third person. The fact that the grand jury has adjourned and been discharged has often been considered as one reason for abandoning secrecy as to its deliberations. It is, however, not the only circumstance which may move the court, nor is it essential to the exercise of its discretion. It yields to the general consideration whether the ends of justice will be furthered by the disclosure. In every case the court is called upon to balance two policies, the one requiring secrecy, the other disclosure.

3. The petition charges that the order entered was invalid and that the court was without jurisdiction to make it.

The petitioner persists in construing the order as though it involved a direction by this court that the testimony be offered and admitted in the revocation proceeding. I have no power to do that, nor would I attempt to control the course of proceeding before another court or administrative body by any such futility. Whether the evidence ought to be received when offered, or whether it ought to be rejected for any reason whatever, are questions for the tribunal to which it is presented. My order merely gives the consent of this court to the disclosure of the testimony in the revocation proceeding and, reduced to its simplest terms, amounts to nothing more than a permission to the officers to disclose and offer the testimony without being held accountable by this court in contempt proceedings or otherwise for so doing. This assurance I have undoubted power to give, and whether it be called an "order" or an "authorization" or something else is immaterial.

The prayer of the petition is denied.