THE FARMERS AND MECHANICS' NATIONAL BANK OF BUFFALO, Respondent, *v.* THE ERIE RAILWAY COMPANY, Appellant.

W., being the general owner of a quantity of wheat, subject to a lien in favor of the M. and T. Bank, and having the custody thereof (it being stored in his name at Buffalo), contracted verbally to sell the same to N. to be paid for on delivery. He gave to N. an order on the warehouse-

man to deliver the wheat to defendant, a common carrier, subject to order.  Defendant thereupon and without any evidence of any right or title of N. to the wheat, gave to N. a bill of lading, stating that the wheat was shipped by N. to New York subject to plaintiff's order.  On the faith of this bill of lading, N. obtained from plaintiff an advance upon the wheat.  Defendant obtained the wheat on the order, transported it to New York, where it was sold by plaintiff to reimburse the advance. The M. and T. Bank brought an action against plaintiff for a conversion of the wheat and obtained a verdict, which plaintiff paid before entry of judgment thereon.  *Held*, that plaintiff was entitled to recover of defendant the damage sustained by its wrongful or negligent act in issuing the bill of lading in the name of N.

An exception was taken to the admission in evidence of the record in the case of the M. and T. Bank; it was not objected to as incompetent evidence on the question of title but generally as incompetent and immaterial; it was not offered or received as conclusive upon that question. It appeared that notice of the action was given defendant with a request to join in the defense.  *Held*, that the record was at least competent to show damages, and the circumstances under which plaintiff paid for the property.

Upon the trial defendant gave evidence of a custom in Buffalo to deliver bills of lading to bearers of similar orders, and that it was usual for sellers to acquiesce in the purchasers thus obtaining control; the witnesses, however, who gave evidence as to the usage, testified also that the order indicated that W. was the owner, and nothing on its face indicated that N. was a purchaser.  W. testified that he did not know of the usage. The court instructed the jury to take the evidence of usage into consideration upon the question of the intent of W. in delivering the order. *Held*, that the evidence failed to establish a custom of the trade binding upon W. or the M. and T. Bank, or which would make such an order in effect an absolute transfer of the right of possession contrary to its legal import or the intention of the party giving it, or which would bind them to the unauthorized representations of N.; and that the instruction to the jury gave to the evidence of custom all the weight to which it was entitled.

(Argued December 20, 1877 ; decided January 22, 1878.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, entered upon an order denying a motion for a new trial and directing judgment on a verdict. This action was brought to recover damages alleged to have been sustained by plaintiff because of defendant's negligence in issuing to " O. L. Nims, agent," a bill of lading of a quantity of wheat which stated that Nims had shipped

the wheat consigned to J. M. Fiske & Co., at New York, subject to plaintiff's order, when in fact O. L. Nims, agent, was not the owner of the wheat or entitled to the possession thereof, the same belonging to one Samuel K. Worthington, of and from whom the defendant received it. In consequence whereof, plaintiff was induced to advance to Nims in reliance upon and on security of the bill of lading.

The facts appear sufficiently in the opinion.

*E. C. Sprague,* for appellant.    No privity existed between defendant and plaintiff, so as to make it defendant's duty to defend the former suit, or a judgment in it binding on defendant.    (*Burr* v. *Bigler*, 16 Abb. Pr., 177; *Yorks* v. *Reeves*, 50 Barb., 397; *Case* v. *Reeves*, 14 J. R., 79; *Natl. F. Ins. Co.* v. *Mackay*, 5 Abb. Pr. [N. S.], 445; *Hopkins* v. *McLaren*, 4 Cow., 667; *Campbell* v. *Hall*, 16 N. Y., 575; *Lawrence* v. *Leake*, 2 Den., 577; *Jackson* v. *Griswold*, 4 Hill, 522; *Bk. of Owego* v. *Babcock*, 5 id., 152; *Ryers* v. *Rippee*, 25 Wend., 435; *Aspinwall* v. *Torrance*, 1 Lans., 381; *Goddard* v. *Benson*, 15 Abb. Pr., 191.)    Even if there were a privity between the parties, the issue, were so different that the former proceedings are not evidence against defendant, and it was not obliged to defend.    (*Mason* v. *Allston*, 9 N. Y., 28; *People* v. *Johnson*, 38 id., 63; *Campbell* v. *Consalus*, 25 id., 613: *Halsey* v. *Reed,* 9 Paige, 446; *Smith* v. *McCluskey*, 45 Barb., 610; *Morgan* v. *Skidmore*, 55 id., 263; *Gutchess* v. *Whitney*, 46 id., 139.)    The defendant was not responsible for the misrepresentations of Caldwell. (*Schooner Freeman* v. *Buckingham*, 18 How. [U. S.], 182; *Grant* v. *Norway*, 10 C. B., 665; *Griswold* v. *Haven*, 25 N. Y., 595.)    The evidence that the custom or usages of the trade authorized defendant to issue the bill of lading in the name of Nims "agent" was sufficient, and the effect of the custom should have been left to the jury as a question of fact.    (*Best* v. *Staple*, 61 N. Y., 71; *Noble* v. *Kennoway*, Doug., 510; 1 Duer on Ins., 259, §§ 55, 264, 265; §§ 60, 268; §§ 62, 271; § 66; *Dalton* v. *Daniels*, 2 Hilt., 472;

*Vail* v. *Rice*, 1 Seld., 155; *Tierney* v. *Etherington*, 1 Burr.
348; *Pelly* v. *Royal Ex. A. Co.*, id., 341; *Salvador* v.
*Hopkins*, 3 id., 1707; *Gracie* v. *Mar. Ins. Co.*, 8 Cranch,
75; *Newman* v. *Cazolet*, 2 Park, 900; *Coml. Bk.* v. *Kort-
right*, 22 Wend., 348; *Astor* v. *Un. Ins. Co.*, 7 Cow., 202;
*Gibson* v. *Culver*, 17 Wend., 305; *Boorman* v. *Jenkins*, 12
id., 566; *Cooper* v. *Kane*, 19 id., 386; *Chandler* v. *Belden*,
18 J. R., 157; *Sewell* v. *Gibbs*, 1 Hall, 605; *De Forest* v.
*Fult. Ins. Co.*, id., 84; *Stanton* v. *Small*, 3 Sand. [S. C.], 230;
*Mangum* v. *Farrington*, 1 Daly, 236; *Fox* v. *Parker*, 44
Barb., 541.) The custom would bind Worthington whether
he knew it or not; for he is conclusively presumed to know
the custom of his own trade. (1 Duer on Ins., 275, § 69;
*Dalton* v. *Daniels*, 2 Hilt., 472; *Whitehouse* v. *Moore*, 13
Abb. Pr., 142; *Pollock* v. *Moore*, 12 Q. B., 685; *Sutton* v.
*Tatham*, 10 Ad. & El., 27; *Mitchell* v. *Newhall*, 15 M. &
W., 308.)

*Wm. H. Greene*, for respondent. It was competent for
plaintiff to put in evidence the record of the proceedings in
the action of the Manufacturers and Traders' Bank against
it to sustain the averments touching the same in the com-
plaint. (C. & H. Notes, 823, 922, 986.) The order of
Worthington having been construed its legal effect could not
be changed by any custom whatever. (60 N. Y., 40, 47,
48, 49.)

RAPALLO, J. At the time of the delivery of the wheat in
question by the Niagara Elevator to the defendant, on the
order of Worthington, Worthington was the general owner
of the wheat, subject to a lien thereon in favor of the Manu-
facturers and Traders' Bank for their advance to him. The
last-named bank had intrusted Worthington with the cus-
tody and management of the wheat, so far as their lien was
concerned, and he had stored it in the Niagara Elevator in
his own name. Nims had no right or title to it, except a
verbal contract of purchase, under which the title and pos-

session were not to pass until payment of the price. Under these circumstances, Worthington drew the order upon the elevator which has given rise to this litigation, and of which the following is a copy:

"2098.                    Buffalo, *Nov.* 17, 1871.

" Propeller Mohawk, or Niagara Elevator: Deliver to Erie railroad fifteen thousand bushels Mil. wheat, more or less, subject to order.        S. K. WORTHINGTON."

This order was delivered by Worthington to Nims, and by Nims to Caldwell, the freight agent of the defendant, who thereupon, and without any evidence of any right or title in Nims to the wheat, delivered to him (Nims) a bill of lading of the defendant, in which it was stated that the wheat was shipped by Nims, consigned to J. M. Fiske & Co., New York, subject to the order of the plaintiff; and, on the faith of that bill of lading, Nims obtained from the plaintiff an advance upon the wheat of $18,750. The wheat was obtained by the defendant from the elevator on the order of Worthington before set forth, and transported by the defendant to New York, where it was afterwards sold by the plaintiff for reimbursement of its advance.

The Manufacturers and Traders' Bank, who had advanced to Worthington on the same wheat, before the defendant had issued the bill of lading to Nims, brought an action against the present plaintiff for the value of the wheat, claiming that no title to the wheat passed to Nims by his dealing with Worthington, nor by the order drawn by Worthington; that consequently the plaintiff acquired no right to a lien upon the wheat by virtue of the pledge of the bill of lading issued by the defendant to Nims, but the title still remained in Worthington, subject to the lien of the Manufacturers and Traders' Bank for its advance to him.

In that action the last-named bank obtained a verdict against the plaintiff in the present action, for the value of the wheat, which verdict was sustained on appeal to this court.

We held in that case, that by giving the order to deliver the wheat to the defendant, Worthington did not part with the possession or control of the wheat, nor authorize the defendant to recognize Nims as owner thereof, or to issue a bill of lading to Nims. That on the face of the order, Worthington alone appeared as the owner, and that the defendant was simply authorized to receive the wheat from the elevator for transportation for his account, and to hold it subject to his orders, and no title passed by the delivering of the defendant's bill of lading to the plaintiff, the defendant having issued such bill of lading to Nims without authority from the owner of the property. (*Manufacturers and Traders' Bank* v. *Farmers and Mechanics' Nat. Bank*, 60 N. Y., 40.) After that decision and before the entry of judgment upon the verdict, the plaintiff paid the value of the wheat to the Manufacturers and Traders' Bank.

In that action as well as in this there was some dispute as to whether the words "subject to order," at the end of the order given by Worthington, had been stricken out. But this court held that it was immaterial whether they were stricken out or not, as they did not vary the meaning of the order, and that in either event Worthington was the only person appearing by the order to be authorized to give directions concerning the wheat, Nims not being named therein, and being merely the messenger employed to convey the order to the defendant.

The plaintiff now sues to recover the damages which it has sustained by the wrongful or negligent act of the defendant in issuing to Nims a bill of lading holding him out as the owner of the wheat, and thus enabling him to obtain from plaintiff an advance on such bill of lading, whereas the wheat was in fact the property of Worthington, or of the bank to whom he had pledged it, and had been received by the defendant from Worthington and not from Nims.

There can be no doubt that the action will lie if the facts are as alleged by the plaintiff. The judge submitted to the jury the question, whether by his dealing with Nims, Worth-

ington intended to part with the control of the wheat, or to deliver it to Nims, in pursuance of the verbal contract of sale, and to authorize him to dispose of it as he did, and charged that if such was the intent, they should find a verdict for the defendant; but that if it was the intention of Worthington to keep the control of the property, and the order for the delivery of the property was given to Nims merely for the purpose of carrying it up to the defendant's office, for the purpose of having the wheat transferred to their cars, and the bill of lading was issued under these circumstances in the name of Nims through the negligence of the defendant, the verdict should be for the plaintiff.

We think this instruction was substantially correct. Worthington had testified that Nims was to pay for the wheat on delivery; that he proposed to Worthington that he should give it to the Erie company for his own account, and that the next day he (Nims) would take it and pay for it; that he (Worthington) assented to this, and drew the order. This court having held that there was nothing on the face of the order which justified the issue of a bill of lading to Nims, if the actual intent of the transaction was not to give him the control, the act of the defendant in giving him the bill stood undefended.

For the purpose of taking this case out of the operation of our former decision as to the construction of the order, evidence was introduced of a custom in Buffalo of issuing bills of lading to the bearer of orders similar in form to that in the present case. The usage, as testified by some of the witnesses, was that where such an order was presented, together with a bill of lading prepared by the party holding the order, and filled up in his own favor, the carrier would sign it without further inquiry, on the assumption that he was a purchaser of the grain; and there was also evidence that it was usual for sellers of grain to acquiesce in the purchaser obtaining control of it in this manner before payment of the price. But the same witnesses who testified to the usage also stated that the order in question indicated

that Worthington was the owner, and there was nothing on the face of the order to show that Nims was a purchaser of the wheat.  We do not think that this evidence established any custom of the trade binding upon Worthington or the bank, which should deprive them of their property without their consent.  It showed at most that in Buffalo sellers of wheat were in the habit of trusting purchasers with the control of their property before payment, and that carriers were in the habit of confiding in and acting upon the representations of dealers, when presenting such orders, that they had purchased the property, and were entitled to the bill of lading.  Those loose habits of dealing did not, however, constitute a custom of trade which would cause such an order to amount to an absolute transfer of the right of possession, contrary to its legal import, and to the actual intention of the party giving it, or which would bind the seller to the unauthorized representation of the purchaser to the carrier. Nims was shown to have been a very extensive dealer in grain in Buffalo at the time in question, and the agent of the defendant may have felt safe in relying upon the representation which he made by presenting the bill of lading for signature, that he was authorized to receive it;  but this confidence was reposed at the risk of the defendant, and not of Worthington or his pledgee.

The judge at the trial did instruct the jury to take the evidence of usage into consideration upon the question of the actual intention of Worthington in delivering the order, and submitted to them whether Worthington knew of such a custom, and dealt with Nims with reference to it.  This, we think, was giving the evidence of custom all the weight to which it was entitled.  Worthington testified that he knew of no such custom.

An exception was taken to the admission in evidence of the record in the case of the Manufacturers and Traders' Bank against the present plaintiff.  Notice of that action had been given to the defendant, with a request to join in defending it. But it was objected to generally, as incompetent and immaterial,

and it is now argued that it was not evidence of the title of the Manufacturers and Traders' Bank, for the reason, among others, that no judgment had been entered on the verdict. It was not, however, objected to on that ground upon the trial, nor was it offered or received as conclusive upon the defendant, but the question of title was retried upon its merits. The record was competent to show damages, and the circumstances under which the plaintiff paid to the Manufacturers and Traders' Bank the value of the property, and no error was committed in receiving it for that purpose, if for no other.

The judgment should be affirmed.

All concur.

Judgment affirmed.