BANK OF BATAVIA, PLAINTIFF, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, DEFENDANT.

*Railroad company — liability of the company, to one advancing money on the faith of a bill of lading, issued by its agent when no property was ever delivered to it — effect of the insertion of the words " contents unknown," in a bill of lading.*

The defendant's agent, at Batavia, on March seventh made and delivered to one Williams an instrument acknowledging the receipt from him of " the following articles (contents unknown) in apparent good order, viz.: Thirty-five barrels beans, I. T. Comstock, New York, marked and numbered as per margin, which the New York, Lake Erie and Western Railroad Company agrees to forward from Batavia to New York." Williams on that day drew a draft on Comstock for $175, annexed it to the said instrument, and procured it to be discounted by the plaintiff. A similar receipt for thirty barrels of beans was given by the defendant's agent on March ninth, which was transferred by Williams to the plaintiff as was the first, annexed to a draft for $150. The drafts were forwarded for collection and were not paid. The property mentioned in the bills of lading, had never been delivered to the defendant and Williams was insolvent.

In an action, brought by the plaintiff to recover the value of the said barrels of beans from the defendant:

*Held*, that the defendant was equitably estopped from denying the receipt thereof, and that the plaintiff was entitled to recover their value.

That the insertion of the words "contents unknown" in the instrument was intended simply to relieve the company from the consequences of any fraud or deception practiced by the shipper in respect to that of which the carrier was ignorant, but as the presumption was that the shipper had not been guilty of fraud or dishonesty their insertion did not relieve the defendant from the burden of proving that the contents of the package had been misdescribed.

MOTION by the defendant for new trial on exceptions taken at the Genesee Circuit and ordered to be heard at General Term in the first instance.

The defendant's agent at Batavia on the 7th day of March, 1881, made and delivered to F. C. Williams an instrument, the material portion of which was as follows:

"NEW YORK, LAKE ERIE AND WESTERN RAILROAD CO., }
"BATAVIA STATION, *March* 7, 1881.           }

"Received from F. C. Williams the following articles (contents unknown) in apparent good order, viz.: 35 barrels beans, I. T. Comstock, New York, marked and numbered as per margin, which the N. Y., L. E. & W. R. R. Co. agrees to forward from Batavia to New York upon the following conditions,   *   *   * and the acceptance of this receipt by the shipper constitutes the agreement for the transportation of the above described goods or property.

"P. J. WEISS, *Agent*."

And on the same day Williams drew his draft of that date on I. T. Comstock, New York, for $175, payable at fifteen days at the Bank of Batavia, annexed it to that instrument and presented it to the plaintiff for discount and it was discounted by the bank, and they were delivered to it. On the ninth day of the same month the agent made and delivered to Williams another instrument in all respects like the first, except the date and the statement of quantity of beans which was "thirty barrels beans." And on that day Williams drew his draft on I. T. Comstock, New York, for $150 at ten days, payable at the same bank, attached it to that instrument and presented it to the plaintiff for discount and it was then discounted, and with the instrument annexed delivered to the plaintiff. The

drafts were sent forward by the plaintiff for collection and were not. paid.

The property mentioned in those bills of lading was not delivered to the defendant. Williams was not responsible. The drafts not having been paid the plaintiff brought this action to recover the amount of them, and it appears that sixty-five barrels of beans were then of the value $325. A verdict was directed for the plaintiff for that amount.

The defendant's exceptions were taken to the denial of a motion for a nonsuit and to the direction of the verdict.

*E. C. Sprague,* for the defendant.

*George Bowen,* for the plaintiff.

BRADLEY, J.:

The instruments made by the defendant's agent were in the nature of bills of lading, and may be treated as such for the purposes of the questions presented for consideration. They were made from printed blanks furnished by the defendant to be used by its agents as receipts and agreements for transportation of property delivered for that purpose, and it was within the powers and duties of the agent Weiss to receive property delivered to the defendant for shipment and issue such bill of lading and deliver it to the shipper.

The plaintiff in good faith advanced to Williams the requisite amount as for discount of the drafts, relying upon the bills of lading as security, and accepted the delivery of them with the drafts as such. It is contended by the defendant's counsel that the plaintiff was not entitled to recover because: 1. The agent had no authority to issue the bills of lading without first having delivery of the property to the defendant. 2. The defendant did not, nor did the agent represent *to the plaintiff* that the defendant had received the property. 3. The bills of lading did not have the quality of negotiability; and 4. The words " contents unknown " so qualified the terms of the receipt that it did not contain a representation of receipt of the property mentioned as contents of the barrels.

Although it is common to insert in bills of lading the words order or assigns, they do not render them negotiable in the sense that bills of exchange and promissory notes are such, and at common

law no right as a contract passes by indorsement and delivery of a bill of lading, but it represents property only, and its transfer so made vests title general or special in the property mentioned in it. And for that purpose no words of negotiability are required. It follows that no privity as between the maker and any third person to such an instrument can arise out of negotiability of it, but the right of the latter rests in title to the property and against the carrier as bailee.

The question of negotiability is not applicable, and has no importance in this case so far as relates to the contract of the defendant to transport.

The delivery of the bills of lading to the plaintiff, with the drafts, would have been sufficient to vest in the latter all the interest the drawer Williams had in the property (if it had been shipped) for the purposes of security for the payment of the drafts. (*Thompson* v. *Dominy*, 14 Mees. & Welsb., 402; *Emery* v. *Irving Nat. Bank*, 25 Ohio, 360; S. C., 18 Am. R., 299; *National Bank* v. *Dearborn*, 115 Mass., 219; *Stollenwerck* v. *Thacher*, Id., 225; *Dows* v. *Greene*, 24 N. Y., 638; *City Bank* v. *R. W. and O. R. R. Co.*, 44 N. Y., 136; *Merchants' Bank* v. *U. R. R. and T. Co.*, 69 N. Y., 373; *Daniel on Neg. Insts.* [3d ed.], §§ 1727, 1731.)

The character of bills of lading, their purpose and the principles applicable to them were quite fully considered in the leading case of *Lickbarrow* v. *Mason* (in K. B., 2 Durn. & E., 63, and in Exch. and H. L., 1 Smith's Leading Cases, 858, 867). But Williams not having shipped the property mentioned in the bills, the plaintiff took no title by their delivery to him, and whatever rights, if any, the plaintiff had against the defendant were given by *estoppel*, because the defendant's relation as bailee could not, nor could its undertaking to transport, become effectual unless and until the property was received.

Now arise the important questions in this case, they are eminently so, and their importance is somewhat increased for the reason that there is a marked conflict of authority both in results by decisions of the courts, and the grounds upon which they are placed. And they relate mainly to the proposition as to the extent limitation may be applied to the powers of the agent in behalf of

the principal, as against one in good faith relying upon the act of the agent purporting to be within the scope of his powers as such, but in fact as between the latter and his principal done without authority. That is one question in this case. The plaintiff advanced the money on the faith of the bills of lading made by the agent; they purported to be within the scope of his powers and duties as such, but those bills were made by him in fact in violation of his duty and without authority. He clearly had no right to issue a bill of lading without receiving the property, and in doing so committed criminal fraud. (Laws 1858, chap. 326, § 5.)

The contention that the principal is not chargeable under such circumstances to a *bona fide* holder of the bill, who has advanced upon the faith of it, has the support of authority. In *Grant* v. *Norway* (10 C. B., 665) it was held that a bill of lading made by a master of a ship for goods not received gave no right of action against the owner of the vessel to the plaintiff, who had made advances on the faith of the bill of lading and taken indorsement and delivery of it from the person named in it as the shipper. And that principle and case were adopted and followed in *Hubbersty* v. *Ward* (8 Exch., 330; 18 Eng. L. and E., 551); *Coleman* v. *Riches* (16 C. B., 104; 29 Eng. L. and E., 323); *Schooner Freeman* v. *Buckingham* (18 How. [U.S.], 182); *Pollard* v. *Vinton* (105 U. S. [15 Otto], 7); *Robinson* v. *Memphis and Charleston Railroad Co.* (9 Fed. Rep., 129, 142); *Baltimore and Ohio Railroad Co.* v. *Wilkens* (44 Md., 11; S. C., 22 Am. R., 26). This proposition is put upon the ground that the master of the ship, and the agent of the carrier, have no authority to issue bills of lading for property not received for shipment, that such is the limitation of his apparent authority of which everybody must take notice, and that it is a fraud on the part of the agent for which he, and not his principal, is liable to one making advances on the faith of the bill of lading. And the principle of those cases is declared as the correct and governing rule in *Brown* v. *Powell D. S. Coal Company* (L. R., 10 C. P., 562; S. C., 14 Moak, 420); *Sears* v. *Wingate* (3 Allen, 103; *Lowell F. C. Savings Bank* v. *Winchester* (8 Allen, 109–118; and see Daniel on Neg. Insts. [3d ed.], secs. 1733, 1733*a*.) Directly in conflict with those first before cited on this question is *Sioux City and P. Railroad Company* v. *First National Bank* (10 Neb., 556;

S. C., 35 Am. R., 488), and they do not seem to have the support on principle of the courts of this State.

While the contention of the defendant's counsel embraces, it goes beyond the question of apparent authority of the agent, and asserts the proposition that to support *estoppel* as against the principal it must go through the negotiability of an instrument, or the representation upon which reliance is placed must be made directly by the agent to the person who seeks to charge the principal.

As before remarked, there is no negotiable quality in the bill of lading as a contract to aid the plaintiff. Nor was the representation that the defendant had received the property made by the agent directly to the plaintiff. But it is usual, and such may be said to be mercantile usage well understood, for the shipper to obtain advances upon his bill of lading, and it is quite necessarily so for the purpose of carrying on business of that character. (*Lickbarrow* v. *Mason, supra,* and S. C., 5 Durn. & E., 683; *First National Bank of C.* v. *Crocker,* 111 Mass., 168; *Hathaway* v. *Haynes,* 124 id., 311; *Commercial Bank* v. *Pfeiffer,* 22 Hu 327; *Marine Bank of C.* v. *Wright,* 48 N. Y., 1.) And the holder of the bill of lading is presumptively the owner of the property mentioned in it, but the person taking delivery of it from a third person is chargeable with notice as against its true owner of the fact if the possession of the one from whom he takes it is unlawful. Nor can it be effectual to vest title in one, who not being the owner or entitled, takes the bill of lading from the carrier. (*M. and T. Bank* v. *F. and M. Nat. Bank,* 60 N. Y., 40; *Brower* v. *Peabody,* 13 id., 121; *Dows* v. *Perrin,* 16 id., 325; S. C., 24 id., 638; *Walter* v. *Brewer,* 11 Mass., 99; *Saltus* v. *Everett,* 20 Wend., 269; S. C., 32 Am. Dec., 541; *Hieskell* v. *F. and M. Nat. Bank,* 89 Penn. St., 155; S. C., 33 Am. R., 745; *Gurney* v. *Behrend,* 3 Ellis & B., 622.) But the carrier may be liable to a person making advances in good faith in reliance upon it as for negligently or wrongfully issuing it to a person not entitled to it. (*F. and M. Bank* v. *Erie Ry. Co.,* 72 N. Y., 188.)

Such liability does not depend upon privity, but on the consequences which come from the negligence or wrong that permits and induces the third person to, and who does proceed and part with value to his prejudice upon the faith of the act.

The learned counsel for the defendant cites *Mechanics' Bank* v. *New York and New Haven Railroad Company* (13 N. Y., 599) on the question of authority of the agent and of estoppel, and in support of the doctrine of *Grant* v. *Norway.* That case purports to declare the rule that inasmuch as a certificate of stock does not have the character of negotiability, the *bona fide* assignee of such certificate issued by the agent of the company in excess of his power takes it subject to the equities existing against the assignor and has no remedy against the principal. But the general purport in that respect of that case has been qualified by later cases, and its effect as authority limited to the questions necessarily involved in it; and so considered it does not reach the question here. In *New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y., 30), which was brought against Schuyler and 320 other defendants to have certain certificates of the plaintiff issued in excess of and without authority declared void, the court there limited the effect of the Mechanics' Bank case to the result required by the propositions fairly in it, and held that although the certificates of stock so issued were void as such, the company by means of *estoppel in pais* and without the aid of any privity, except such as was created by the unlawful act and the consequential injury, was liable to *bona fide* holders of those certificates, not upon contract but for the tortious act of the company through its agent, for the reason that they were *ultra vires*, and by way of damages occasioned by the act of the agent clothed with apparent authority. There the agent had power to issue certificates of stock to a certain prescribed extent. He fraudulently exceeded that by the issue of additional certificates without authority. The court held that the company was chargeable to holders in good faith for value of those certificates for the fraud of the agent, for the consequences of the acts committed by him beyond the powers granted, which is "based on the injustice of allowing a party to be the author of his misfortune and then to charge the consequences upon others," and stated as the proposition settled as the law of this State "that where the authority of an agent depends upon some fact outside the terms of his power, and which from its nature rests particularly within his knowledge, the principal is bound by the representations of the agent, although false, as to the existence of such fact." And (p. 72) reaffirmed the

doctrine of *North River Bank* v. *Aymar* (3 Hill, 262), which had been treated as overruled in *Mechanics' Bank* v. *New York and New Haven Railroad Company*.

In *Pollard* v. *Vinton* (*supra*), the court appreciating the force of the *Railroad Company* v. *Schuyler* case, suggested that there might be a distinction which would permit corporations to be charged by acts of agents in cases where an individual would not be chargeable, as the transactions of the former were wholly by agencies. But no such distinction is observed in the cases before cited. (And see *Titus* v. *G. W. Turnpike Road*, 61 N. Y., 237; *Merchants' Bank* v. *Griswold*, 72 id., 472, 478; *Fishkill Savings Institution* v. *Nat. Bank*, 80 id., 162, 168.)

It is difficult to see how the doctrine of the case of *Grant* v. *Norway*, and those following it, can be reconciled with the principle upon which *New York and New Haven Railroad Company* v. *Schuyler* was determined, and they must yield to it as authority in this State. And inasmuch as the right of the plaintiff against the defendant is not dependent on privity, and the use made of the bills of lading in obtaining the advances on them was within that which might have been reasonably expected, it hardly seems necessary to consider further the contention that communication directly from the agent to the plaintiff was necessary to charge the defendant.

In *Griswold* v. *Haven* (25 N. Y., 604), that proposition was neither affirmed or denied because it was not necessary to support the recovery. And although the court there moderately criticised some of the propositions announced in *Mechanics' Bank* v. *New York and New Haven Railroad Company*, it adopted the limited rule of agency authority, as applied to consequences, to persons acting in good faith, stated in that case, and brought its determination within it by means of the fact that the communication that the statement in the warehouse receipt in question was true, was made directly to the plaintiff by one of the firm composed of the defendants, and thus establish a privity between them and the plaintiff; and referred to the escape from the Mechanics' Bank case made in *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank* (16 N. Y., 125), by the support of the fact of the negotiability of the instrument which produced privity there, and added " no doubt

the negotiable character of the paper was essential to the plaintiffs' right of action both in the case of Aymar and that of the Butchers and Drovers' Bank, because the only representation by the agent was in assuming to be authorized to execute the paper, and this being made primarily to another party, himself cognizant of the fraud, would, aside from the negotiable words, have afforded no ground of action to the plaintiff. The cases would then have been precisely like that of the New York and New Haven Railroad Company" (p. 602), to which at that time it evidently seemed to the court proper and perhaps necessary to conform. And as the facts distinguished the case in that respect from *Grant* v. *Norway* it was unnecessary to overrule the latter. (P. 604.) But since the case of *New York and New Haven Railroad Company* v. *Schuyler*, privity in the sense stated in those cases is not essential to the support of equitable estoppel and the right of action based upon it. In *Armour* v. *Michigan Central Railroad Company* (65 N. Y., 111, reversing 3 J. & S., 563), where bills of lading were procured to be issued to one Michaels by defendant's agent for goods not received, representing Michaels as shipper, and the plaintiff as consignee, the latter, upon the faith of the bill of lading, paid advance drafts drawn upon him by Michaels, the court held that he had right of action against the defendant. The determination of that case removes the basis upon which *Grant* v. *Norway* and kindred cases rest, and effectually overrules them, and although the Grant case is disapproved, DWIGHT, C., distinguishes it, and brings the Armour case within *Griswold* v. *Havens* on the fact that the plaintiff was named as consignee in the bill of lading, and therefore through that instrument the representation by the defendant's agent might be treated as made to the plaintiff. But that distinction is not substantial in view of the principle in such cases on which the *estoppel in pais* and consequent liability depend. (*N. Y. and N. H. R. R. Co.* v. *Schuyler, supra ; F. and M. N. Bank* v. *Erie Ry. Co.*, 72 N. Y., 188.)

The requisites of estoppel and the general principles upon which it rests are familiar and well stated in *Barnard* v. *Campbell* (55 N. Y., 456), and the rule applicable to assignment of non-negotiable choses in action (*Bush* v. *Lathrop*, 22 N. Y., 535 ; *Davis* v. *Bechstein*, 69 N. Y., 440; *Union College* v. *Wheeler*, 61 N. Y.,

88; *Reeves* v. *Kimball*, 40 N. Y., 299; *Wilcox* v. *Howell*, 44 N. Y., 398), has no application to this case.

The question of estoppel might there arise if the maker or assignor voluntarily annexed a statement to it, which had the effect to induce a party in good faith and in reliance upon it to part with value. The authority of the agent in this case was general, to receive property for shipment and transportation and issue to the shipper bills of lading like that in question. The exercise of this power of issuing the bill depended upon the fact *de hors* the power — the receipt of the property — and that fact, whether or not the goods had been received rested particularly within his personal knowledge. And his statement in that respect, though false, made in such due manner and form, charged the defendant in behalf of the plaintiff who legitimately and in good faith made the advances in reliance upon it as true.

This produces the situation to which equitable estoppel will for his protection be applied against the defendant within the rule well established in this state.

The statement of amount or quantity of goods mentioned in a bill of lading as against the common carrier is only *prima facie* evidence and may be explained or contradicted. To that extent it may be treated as a mere receipt. (*Meyer* v. *Peck*, 28 N. Y., 590; *Abbe* v. *Eaton*, 51 N. Y., 410.) And when, as it is quite usual, the words " contents unknown " are inserted, the statement of contents of the packages as expressed in the bill do not conclude the carrier or charge the company with the consequences of any fraud or deception practiced by the shipper in that respect, of which the carrier is ignorant at the time of issuing the bill of lading. (*Miller* v. *Hannibal and St. Jo R. R. Co.*, 90 N. Y., 430.) That the contents in such case are different from those mentioned in the bill of lading is not presumed, but on the contrary the presumption arising would be against fraud or dishonesty on the part of the shipper, and relief against it would require proof of the fact on the part of the carrier. (*Hatch* v. *Bayley*, 12 Cush., 27; *Shaw* v. *Gardner*, 12 Gray, 488.)

The defendant having issued its statement contained in its bills of lading, in the usual form of those made by it, having *prima facie* the import and effect that the defendant had received the

property mentioned in it for transportation, when in fact it had received nothing, cannot be permitted to assert by way of relief from its wrongful or negligent act as against the plaintiff, that if the barrels had been received with the statement of the contents, that it possibly may have been false, and therefore because of the words "contents unknown," the defendant has not represented that they were as stated in the bill, and the plaintiff was not justified in his belief that they were. The plaintiff has the right to charge his loss to the consequences of this act of the defendant through its agent, and for that purpose to base it upon the value of the contents of the packages as they were represented in the bills of lading. And if there was any question of fact for the jury (which is not apparent) that is not raised by the exception to the direction of the verdict, as the defendant's counsel treated the questions presented by the evidence as those of law only, and did not request the submission of any question to the jury. (*Barnes* v. *Perine*, 12 N. Y., 18; *O'Neill* v. *James*, 43 id., 85.)

A new trial should be denied and judgment ordered for the plaintiff on the verdict.

SMITH, P. J., and HAIGHT, J., concurred; BARKER, J., not voting.

New trial denied and judgment ordered for the plaintiff on the verdict.